UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

----------------------------------------------------------------------X

**SHERECE SHEMEKA BROWN**                                    Civil Action No.:
100 Florida Ave NE, Apt 1233
Washington, DC 20002

                           Plaintiff,

        -against-

**CBS NEWS, INC.**
524 West 57th Street
New York, NY 10019
**CBS BROADCASTING INC.**
1515 Broadway
New York, NY 10036
**PARAMOUNT GLOBAL d/b/a PARAMOUNT**
1515 Broadway
New York, NY 10036
**LAURA FORAN**
2020 M St NW
Washington, DC 20036
**ALISON HAWLEY**
c/o CBS Broadcast Center, 524 West 57th Street
New York, NY 10019
**BRIAN NALESNIK**
2020 M St NW
Washington, DC 20036
**MELISSA MCKEON**
c/o CBS Broadcast Center, 524 West 57th Street
New York, NY 10019
**MARY HAGER**
2020 M St NW
Washington, DC 20036
**RICK JEFFERSON**
c/o CBS Broadcast Center, 524 West 57th Street
New York, NY 10019
**ROSS DAGAN**
c/o CBS Broadcast Center, 524 West 57th Street
New York, NY 10019
**MICHAEL GARRY RODERICK**
c/o CBS Broadcast Center, 524 West 57th Street
New York, NY 10019
**DANIEL KLOS**
2020 M St NW
Washington, DC 20036

                           Defendants.
----------------------------------------------------------------X

1

**COMPLAINT AND JURY DEMAND**

Plaintiff SHERECE SHEMEKA BROWN (hereinafter referred to as "Plaintiff" or "Ms. Brown"), by and through Plaintiff's undersigned counsel, THE COCHRAN FIRM, as and for Plaintiff's Complaint and Jury Demand in this action against the Defendants, CBS NEWS, INC., CBS BROADCASTING INC., PARAMOUNT GLOBAL D/B/A PARAMOUNT, LAURA FORAN, ALISON HAWLEY, BRIAN NALESNIK, MELISSA MCKEON, MARY HAGER, RICK JEFFERSON, ROSS DAGAN, MICHAEL GARRY RODERICK, DANIEL KLOS (collectively "Defendants"), alleges as follows:

## NATURE OF THE CLAIMS

1.  This is a civil action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendants' unlawful employment practices against Plaintiff, including their discriminatory treatment of Plaintiff on the basis of her race, their creation and maintenance of a racially hostile work environment, and their unlawful retaliation against the Plaintiff for opposing race discrimination, all in violation of 42 U.S.C. § 1981 ("Section 1981"), and their discriminatory treatment of, harassment of, and retaliation against Plaintiff on the basis of her race, color, personal appearance, and age, in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA").

2.  Defendants' conduct is knowing, malicious, willful, intentional, and wanton and/or shows a reckless disregard for the Plaintiff. It has caused and continues to cause the Plaintiff to suffer substantial economic and non-economic damages, permanent harm to her professional and personal reputations, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), because the causes of action asserted herein arise under the laws of the United States, namely 42 U.S.C. § 1981.

4. 28 U.S.C. § 1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

5. This Court has supplemental jurisdiction over Plaintiff's claims arising under the DCHRA pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy, arising from a common nucleus of operative fact.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this judicial district, including at Defendants' Washington, D.C. Bureau, located at 2020 M Street NW, Washington, D.C. 20036 (the "D.C. Bureau"), where Plaintiff worked from in or around November 2020 through the end of her employment.

7. This Court has personal jurisdiction over Defendants CBS NEWS, CBS BROADCASTING, and PARAMOUNT (collectively, the "Corporate Defendants") because each operates, maintains, and conducts continuous and systematic business at the D.C. Bureau, and because the claims asserted herein arise directly out of the Corporate Defendants' conduct, transactions, and employment decisions within the District of Columbia, including the employment of Plaintiff at the D.C. Bureau.

8. This Court has personal jurisdiction over Defendants FORAN, NALESNIK, HAGER, and KLOS because each worked at the D.C. Bureau during the relevant period and committed within the District of Columbia the acts and omissions giving rise to the claims asserted herein.

9. This Court has personal jurisdiction over Defendants HAWLEY, JEFFERSON, MCKEON, DAGAN, and RODERICK pursuant to the District of Columbia long-arm statute, D.C. Code § 13-423(a)(1), (3), and (4), because each transacted business within the District of Columbia, regularly supervised, directed, and made decisions concerning the operations and personnel of the D.C. Bureau — including decisions concerning the terms, conditions, and privileges of Plaintiff's employment at the D.C. Bureau — caused tortious injury to Plaintiff within the District of Columbia, and/or was physically present at and worked from the D.C. Bureau at times relevant to this Complaint, and because the claims asserted herein arise directly from those contacts. Defendant HAWLEY, in particular, relocated to and worked at the D.C. Bureau for substantial periods relevant to this Complaint.

10. Plaintiff has filed suit with this Court within all applicable statute of limitations periods, as set forth more fully in the "Timeliness" section below.

11. All conditions and requirements precedent to the commencement of this action have been met. No administrative exhaustion is required for claims arising under 42 U.S.C. § 1981, , and a plaintiff may bring a private cause of action under the DCHRA without first filing an administrative complaint. D.C. Code § 2-1403.16(a).

12. Plaintiff has not filed a complaint with the District of Columbia Office of Human Rights ("OHR") and has made no election of remedies under D.C. Code § 2-1403.16. To the extent the charge of discrimination Plaintiff submitted to the U.S. Equal Employment Opportunity Commission on or about November 20, 2024 was cross-filed with OHR by operation of a worksharing agreement, any such cross-filing was not initiated by Plaintiff and does not constitute an election of remedies barring this action.

## RELATED STATE COURT PROCEEDING

13.  On or about March 2025, Plaintiff commenced an action in the Supreme Court of the State of New York, New York County, captioned *Brown v. CBS News, Inc. et al.*, Index No. 152570/2025 (the "New York Action"), asserting claims under the New York State Human Rights Law and the New York City Human Rights Law.

14.  By Decision and Order dated May 10, 2026 (NYSCEF Doc. No. 37), the Honorable Kathleen Waterman-Marshall, J.S.C., dismissed all claims in the New York Action arising out of conduct occurring in Washington, D.C. — expressly *not* on the merits, but for lack of subject matter jurisdiction — holding that the New York State and City Human Rights Laws do not extend to discriminatory conduct occurring in, and impacting a plaintiff in, the District of Columbia. The claims asserted in this action arise out of that D.C.-based conduct and are properly brought in this Court, where the conduct occurred and where its impact was felt.

15.  The sole claims remaining in the New York Action concern Defendants' discriminatory failure to hire Plaintiff for the directorship of the New York-based *Saturday Morning Show* and related retaliation. Plaintiff does not assert those claims in this action and does not seek duplicative relief herein for the claims pending in the New York Action. Allegations concerning the *Saturday Morning Show* and related events are pleaded in this Complaint solely as relevant background and context.

## PARTIES

### *The Plaintiff*

16.  Plaintiff Sherece Shemeka Brown (hereinafter referred to as "Plaintiff") is an individual black, African American female.

17.  At all times material to this Complaint, Plaintiff is a member of multiple protected classes.

18.     At all times material to this Complaint, Plaintiff maintained a residence in New York City, Queens County, State of New York, and resided and worked in the District of Columbia, where she was employed at Defendants' D.C. Bureau.

### *The Defendants and their agents*

19.     At all times material to this Complaint, Defendant CBS NEWS, INC. (hereinafter referred to as "CBS NEWS" and/or "Defendant CBS NEWS") is a business operating throughout the United States, headquartered at the CBS Broadcast Center in New York City and operating a news bureau at the D.C. Bureau in the District of Columbia, where Plaintiff worked, and, at all relevant times herein, was the Plaintiff's employer.

20.     CBS NEWS is a 24-hour news channel that offers breaking news, original reporting, interviews, investigations, analysis, and more. CBS NEWS has bureaus around the world, including the D.C. Bureau, and is headquartered in the CBS Broadcast Center in New York City. CBS NEWS generates annual revenue of more than $1B USD. CBS NEWS is a subsidiary of parent company, Defendant CBS BROADCASTING INC.

21.     At all times material to this Complaint, CBS NEWS met the definition of an "employer," and/or "joint employer," and/or "single employer."

22.     At all times material to this Complaint, CBS NEWS acted, and continues to act, by and through their employees, agents, and servants who were performing duties in the scope and course of their employment, agency, and servitude.

**CBS News**

**CBS News** is the news division of the American television and radio service CBS. CBS News television programs include the *CBS Evening News*, *CBS Mornings*, news magazine programs *CBS News Sunday Morning*, *60 Minutes*, and *48 Hours*, and Sunday morning political affairs program *Face the Nation*. CBS News Radio produces hourly newscasts for hundreds of radio stations, and also oversees CBS News podcasts like *The Takeout Podcast*. CBS News also operates a 24-hour digital news network.

Up until April 2021,[1] the president and senior executive producer of CBS News was Susan Zirinsky, who assumed the role on March 1, 2019.[2] Zirinsky, the first female president of the network's news division,[3][4] was announced as the choice to replace David Rhodes on January 6, 2019.[5][6] The announcement came amid news that Rhodes would step down as president of CBS News "amid falling ratings and the fallout from revelations from an investigation into sexual misconduct allegations" against CBS News figures and Rhodes.[7]

23. At all times material to this Complaint, Defendant CBS BROADCASTING, INC. (hereinafter referred to as "CBS BROADCASTING" and/or "Defendant CBS BROADCASTING") is a business operating throughout the United States, including headquarters in the State of New York and operations in the District of Columbia, including at the D.C. Bureau, and, at all relevant times herein, was Plaintiff's employer.

24. CBS BROADCASTING is an American commercial broadcast television and radio network, serving as the flagship property of the CBS Entertainment Group division of Defendant, PARAMOUNT GLOBAL d/b/a PARAMOUNT. As a member of the "Big Three" television networks, CBS BROADCASTING has major production facilities and operations at the CBS Broadcast Center and the headquarters of owner PARAMOUNT GLOBAL d/b/a PARAMOUNT at One Astor Plaza, and Television City and the CBS Studio Center in Los Angeles. CBS BROADCASTING generates annual revenue of over $3B USD.

25. At all times material to this Complaint, CBS BROADCASTING met the definition of an "employer," and/or "joint employer," and/or "single employer."

26. At all times material to this Complaint, CBS BROADCASTING acted, and continues to act, by and through their employees, agents, and servants who were performing duties in the scope and course of their employment, agency, and servitude.



**CBS**

**CBS Broadcasting Inc.**, commonly shortened to **CBS** (the abbreviation of its former legal name **Columbia Broadcasting System**), is an American commercial broadcast television and radio network, serving as the flagship property of the CBS Entertainment Group division of Paramount Global.

Headquartered at the CBS Building in New York City and being part of the "Big Three" television networks, CBS has major production facilities and operations at the CBS Broadcast Center and the headquarters of owner Paramount at One Astor Plaza (both also in that city) and Television City and the CBS Studio Center in Los Angeles. It is sometimes referred to as the **Eye Network**, in reference to the company's trademark symbol (which has been in use since 1951),[1] and also the **Tiffany Network**, which alludes to the perceived high quality of its programming during the tenure of William S. Paley (and can also refer to some of CBS's first demonstrations of color television, which were held in the former Tiffany and Company Building in New York City in 1950).[2][3]



**CBS CORPORATION REPORTS THIRD QUARTER 2019 RESULTS**

Revenues of $3.3 Billion, Up 1%
Diluted EPS of $.85; Adjusted Diluted EPS of $.95

NEW YORK, November 12, 2019 - CBS Corporation (NYSE: CBS.A and CBS) today reported results for the third quarter of 2019, including an all-time high in the third quarter for revenues.

"We delivered record third-quarter revenues as we continue to increase our investment in our premium content and direct-to-consumer streaming services, which is the cornerstone of our growth strategy," said Joe Ianniello, President and Acting Chief Executive Officer, CBS Corporation. "During the quarter, our direct-to-consumer revenue from *CBS All Access* and Showtime OTT grew 39% from last year, driven by a strong slate of original programming. Meanwhile, retrans, reverse comp and virtual MVPD revenues grew 18%, and our total affiliate and subscription fees grew 12%, representing more than a third of our overall revenue in Q3. Our content licensing revenue is also growing as we ramp up production of programming for all of our platforms, including five new hit shows that we just launched on the biggest platform in media, the CBS Television Network, which is on track to end the season as the most-watched network for the 12th consecutive year. Our base business also remains strong, with solid underlying network advertising growth of 2% during the quarter. In addition, here in the fourth quarter we have a terrific programming schedule at Showtime, including returning favorites *Shameless* and *Ray Donovan*, along with a number of exciting new series, such as *The L Word: Generation Q*. So we are building great momentum as we near our merger with Viacom and head into 2020."

27. At all times material to this Complaint, Defendant CBS NEWS and Defendant CBS BROADCASTING (hereinafter collectively referred to as "CBS" and/or "Defendants CBS") jointly employed Plaintiff.

28. At all times material to this Complaint, Defendant PARAMOUNT GLOBAL d/b/a PARAMOUNT (hereinafter referred to as "PARAMOUNT" and/or "Defendant PARAMOUNT") is a business operating throughout the United States, including headquarters in the State of New York, in the City of New York, and operations in the District of Columbia, and, at all relevant times after 2019, was Plaintiff's employer.

29. PARAMOUNT is a global mass media and entertainment conglomerate, whose main properties include the CBS Entertainment Group, consisting of the CBS and CW television networks,

8

television stations, BET Network, VH1 Network, and other CBS-branded assets. PARAMOUNT generates annual revenue of over $30B USD.

30. At all times material to this Complaint, PARAMOUNT met the definition of an "employer," and/or "joint employer," and/or "single employer."

31. At all times material to this Complaint, PARAMOUNT acted, and continues to act, by and through their employees, agents, and servants who were performing duties in the scope and course of their employment, agency, and servitude.

**Paramount**[5]) is an American multinational mass media and entertainment conglomerate controlled by National Amusements and headquartered at One Astor Plaza in Midtown Manhattan in New York City. The company was formed on December 4, 2019, as **ViacomCBS Inc.** through the merger of the second incarnations of CBS Corporation and Viacom[6] (which were split from the original Viacom on December 31, 2005). The company changed its name to Paramount Global on February 16, 2022, the day after its Q4 earnings presentation.[7]

Paramount's main properties include the namesake Paramount Pictures film and television studio, the CBS Entertainment Group (consisting of the CBS and CW television networks, television stations, BET Networks, (who owns the BET and VH1 channels, among others), and other CBS-branded assets), media networks (consisting of U.S.-based cable television networks including MTV, Nickelodeon, Comedy Central, CMT, Paramount Network, and Showtime) and the company's streaming services (including Paramount+ and Pluto TV). It also has an international division that manages international versions of its pay TV networks, as well as region-specific assets including Argentina's Telefe, Chile's Chilevisión, India's Colors, the United Kingdom's Channel 5, and Australia's Network 10. Between 2011 and 2023, the division also owned a 30% stake in the Rainbow S.p.A. studio.[8]

As of 2019, the company operates over 170 networks and reaches approximately 700 million subscribers in 180 countries.[9]

Paramount Global annual/quarterly revenue history and growth rate from 2010 to 2023. Revenue can be defined as the amount of money a company receives from its customers in exchange for the sales of goods or services. Revenue is the top line item on an income statement from which all costs and expenses are subtracted to arrive at net income.

- Paramount Global revenue for the quarter ending September 30, 2023 was $7.133B, a 3.14% increase year-over-year.
- Paramount Global revenue for the twelve months ending September 30, 2023 was $30.145B, a 0.41% increase year-over-year.
- Paramount Global annual revenue for 2022 was $30.154B, a 5.49% increase from 2021.
- Paramount Global annual revenue for 2021 was $28.586B, a 13.06% increase from 2020.
- Paramount Global annual revenue for 2020 was $25.285B, a 6.34% decline from 2019.

32. At all times material to this Complaint, CBS and PARAMOUNT jointly employed Plaintiff.

33. From the PARAMOUNT-branded employment literature and PARAMOUNT-tailored services Plaintiff was assigned and required to utilize as conditions of her employment, it is clear that Defendant PARAMOUNT jointly employed Plaintiff throughout the relevant period.

34. As an example, Plaintiff's employee portal landing page featured several direct references to PARAMOUNT, including links to, *inter alia*, a PARAMOUNT Total Rewards Portal, to Office 365 PARAMOUNT E-Mail, to PARAMOUNT Global Concur, to Office 365 PARAMOUNT

Microsoft Office Teams, to PARAMOUNT Slack, to PARAMOUNT Zoom, to PARAMOUNT Mentoring, and to PARAMOUNT Careers, alongside the conspicuous PARAMOUNT logo prominently affixed to the upper left corner of the employee portal itself and user profile menu to the upper right corner.



35.  At all times material to this Complaint, Ms. Laura Foran (hereinafter referred to as "FORAN") was, and still is, a Production Manager at CBS, based at the D.C. Bureau. FORAN is an individual, non-black, non-African American woman, who is older than the Plaintiff.

36.  FORAN was, and continues to be, an active participant and a driving force in the unlawful discrimination, harassment, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.



Laura Foran
Technical Production Manager at CBS News - Face the Nation

37.  At all times material to this Complaint, Ms. Alison Hawley (hereinafter referred to as "HAWLEY") was a Director, supervisor, and a decision maker with regard to Plaintiff's

employment at PARAMOUNT and CBS, who worked at and from the D.C. Bureau for substantial periods relevant to this Complaint. HAWLEY is an individual, non-black, non-African American woman who is older than the Plaintiff.

38.    HAWLEY was an active participant and a driving force in the unlawful discrimination, harassment, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.



**Alison Hawley**
New York, New York, United States -

39.    At all times material to this Complaint, Mr. Brian Nalesnik (hereinafter referred to as "NALESNIK") was a Director, supervisor, and a decision-maker with regard to Plaintiff's employment at PARAMOUNT and CBS, based at the D.C. Bureau during the relevant period. NALESNIK is an individual, non-black, non-African American man.

40.    NALESNIK was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.



**Brian Nalesnik**
Director for CBS Evening News
Arlington, Virginia, United States

41.    At all times material to this Complaint, Ms. Melissa McKeon (hereinafter referred to as "MCKEON") was a Human Resources Director, supervisor, and a decision-maker with regard to Plaintiff's employment at PARAMOUNT and CBS. MCKEON is an individual, non-black, non-African American woman.

42. MCKEON was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.



43. At all times material to this Complaint, Ms. Mary Hager (hereinafter referred to as "HAGER") was an Executive Producer, supervisor, and a decision-maker with regard to Plaintiff's employment at PARAMOUNT and CBS, based at the D.C. Bureau during the relevant period. HAGER is an individual, white, non-African American woman who is older than the Plaintiff.

44. HAGER was an active participant and a driving force in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.



Mary Hager
Executive Producer at CBS News Face the Nation at ViacomCBS

45. At all times material to this Complaint, Mr. Rick Jefferson (hereinafter referred to as "JEFFERSON") was a Senior Vice President, supervisor, and a decision-maker with regard to Plaintiff's employment at CBS and PARAMOUNT, with supervisory authority over, and regular involvement in, the operations and personnel decisions of the D.C. Bureau, including decisions concerning Plaintiff's employment there.

46. JEFFERSON was an active participant in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.



Rick Jefferson
Senior Vice President, News Operations, CBS News

47.  At all times material to this Complaint, Mr. Ross Dagan (hereinafter referred to as "DAGAN") was an Executive Vice President, supervisor, and a decision-maker with regard to Plaintiff's employment at CBS and PARAMOUNT, with supervisory authority over, and regular involvement in, the operations and personnel decisions of the D.C. Bureau, including decisions concerning Plaintiff's employment there.

48.  DAGAN was an active participant in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.



Ross Dagan
MICHELE CROWE/CBS NEWS

49.  At all times material to this Complaint, Mr. Michael Garry Roderick (hereinafter referred to as "RODERICK") was a Vice President of Employee Relations, supervisor, and a decision-maker with regard to Plaintiff's employment at PARAMOUNT and CBS, whose responsibilities included receiving, investigating, and acting upon complaints of discrimination arising at the D.C. Bureau, including Plaintiff's complaints.

50.  RODERICK was an active participant in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

51. At all times material to this Complaint, Mr. Daniel Klos (hereinafter referred to as "KLOS") was a Director, supervisor, and a decision-maker with regard to Plaintiff's employment at PARAMOUNT and CBS, based at the D.C. Bureau during the relevant period.

52. KLOS was an active participant in the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

53. At all times material to this Complaint, Mr. Islam Sharief (hereinafter referred to as "Mr. Sharief") was a supervisor, and a decision-maker with regard to Plaintiff's employment at PARAMOUNT and CBS, based at the D.C. Bureau.

54. Mr. Sharief was a witness to the unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

55. At all times material to this Complaint, Sampson was a supervisor with regard to Plaintiff's employment at PARAMOUNT and CBS at the D.C. Bureau. Sampson is not named as a defendant herein.

56. At all times material to this Complaint, Mr. Michael Berger (hereinafter referred to as "Mr. Berger") was Plaintiff's Directors Guild of America union representative. Mr. Berger was a witness to Defendants' unlawful discrimination, retaliation and otherwise unfair employment decisions and actions taken against Plaintiff.

57. The Corporate Defendants each operate and conduct substantial, continuous business at the D.C. Bureau in the District of Columbia, where Plaintiff worked throughout the relevant period. These same Corporate Defendants forced Plaintiff to work in D.C. as a sham pursuant to a course of conduct intended to force her out of her employment and to incur additional living expenses in D.C. while maintaining a residence in New York City.

58. FORAN, HAWLEY, NALESNIK, MCKEON, HAGER, JEFFERSON, DAGAN, RODERICK, and KLOS are collectively referred to as the "Individual Defendants."

59. At all times material to this Complaint, the discriminatory and retaliatory actions and decisions impacting Plaintiff's employment occurred at, were directed at, and/or had their impact upon Plaintiff at, Defendants' D.C. Bureau in the District of Columbia, where Plaintiff worked. These actions and decisions included terminating Plaintiff's employment, preparing Plaintiff's annual reviews, determining Plaintiff's work assignments on a daily basis, determining Plaintiff's workload, staffing, and compensation, setting meetings with Plaintiff, and all other job functions related to Plaintiff's job at the D.C. Bureau.

60. At all times material to this Complaint, Plaintiff's claims arose out of Defendants' activities in the District of Columbia, within this judicial district.

61. At all times material to this Complaint, the Individual Defendants were aware of and subject to PARAMOUNT's Non-Discrimination and Anti-Harassment Policy, including, specifically, the policy's provisions on supervisory responsibility.

**Supervisory Responsibility**

Managers and supervisors are charged with additional responsibilities because of their positions of authority within Paramount. Managers and supervisors are required to promote a work environment where individuals feel safe and comfortable asking questions or raising concerns about these policies, and to make themselves available to listen to and discuss concerns. As such, managers and supervisors are responsible for any harassment and discrimination that should have been known to them with reasonable care and attention to the workplace for which they are responsible. While these duties are mandatory for managers and supervisors, they also are strongly encouraged for all individuals who are covered by this policy.

Managers and supervisors are required to report any complaint of harassment or discrimination they receive or any harassment or discrimination they observe, without exception. If a manager or supervisor receives a report of harassment or discrimination, or is otherwise aware of such conduct, they are required to promptly report it to the Paramount Human Resources Department, the Paramount Employee Relations Department, or to the Paramount Compliance Officers, even where they may believe the conduct is trivial, or where an individual (including the complainant or otherwise) asks that it not be reported.

Managers and supervisors will be subject to discipline, up to and including termination, for failing to report any allegations or suspicions of harassment or discrimination, otherwise knowingly allowing harassment or discrimination to continue, or for engaging in any harassing, discriminatory, or retaliatory conduct themselves.

3

62.    At all times material to this Complaint, the Individual Defendants were aware of and subject to the

said policy's provisions on workplace discrimination and harassment.

b. **Harassment on the basis of all protected characteristics** is also strictly prohibited. Under this policy, harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of race, color, ethnicity, national origin, religion, sex (including pregnancy, childbirth, breastfeeding or related medical conditions), age, physical disability, mental disability, medical condition, ancestry, alienage or citizenship status, marital status, familial status, caregiver status, creed, genetic information, height or weight, sexual orientation, military or veteran's status, gender, gender identity, gender expression, transgender status, status as a victim of domestic violence, sexual violence or stalking, sexual and reproductive health decisions, or any other characteristic protected by law – including, in some jurisdictions such as in New York or California, traits historically associated with race (including hair texture and hairstyle) and religion (including wearing any attire or having facial hair in accordance with one's religion) – or that of an individual's relatives, friends or associates, and that: (a) has the purpose or effect of creating an intimidating, hostile or offensive work environment; (b) has the purpose or effect of unreasonably interfering with an individual's work performance; or (c) otherwise adversely affects an individual's employment opportunities. Harassing conduct includes, but is not limited to, epithets, slurs or negative

stereotyping; threatening, intimidating or hostile acts; denigrating jokes and display or circulation in the workplace of written or graphic material that denigrates or shows hostility or aversion toward an individual or group (including, but not limited to, through posting on walls, e-mail, text message, instant messenger, social media, or other electronic communication).

**Individuals and Conduct Covered**
These policies apply to and cover all applicants, employees, interns (whether paid or unpaid), contractors, temporary workers, vendors and any other individuals conducting business or providing services at Paramount, regardless of immigration status, and prohibit harassment, discrimination and retaliation whether engaged in by fellow employees, by a supervisor or manager or by someone not directly connected to Paramount (e.g., an outside vendor, consultant, or customer).

## FACTUAL ALLEGATIONS

16

63.    In or around 2008 Plaintiff began her employment with Defendants as a Page.

64.    In or around 2010, as a result of her excellent performance, Plaintiff received a promotion to Graphics Production Assistant.

65.    In or around 2017, as a result of her excellent performance, Plaintiff received a promotion to Associate Director.

66.    At all times material to this Complaint, Plaintiff was qualified for each of these positions. Plaintiff performed all duties assigned in a diligent and thorough manner throughout her employment.

67.    Throughout her employment with Defendants, Plaintiff was singled out with compliments for her work performance and always got along well with her co-workers.

68.    Plaintiff has exhibited the utmost professionalism and care for clients and the employees with whom she worked.

From: Cullen, Renee <CullenR@viacomcbs.com>
Sent: Tuesday, April 13, 2021 8:29 PM
To: Brown, Sherece S <BrownS@viacomcbs.com>
Subject: Fwd: Sherece Brown

Don't let him know I shared this

This is great
He's a tough sell

So proud of you

Get Outlook for iOS

From: Sloane, Ward <WSP@cbsnews.com>
Sent: Tuesday, April 13, 2021 2:17:01 PM
To: Cullen, Renee <CullenR@cbsnews.com>
Subject: Sherece Brown

Renee,

How are you?  Hope all is well.

I wanted to send you a note to praise Sherece Brown.   She is an excellent director – we work with her for special reports every Monday and Tuesday – and I am totally impressed.   She is always on top of everything, has things done before I ask about them, and very organized.   I know she is an AD – but she has what it takes.

For your files,

Ward.

**Brown, Sherece S**

From:              Sharief, Islam
Sent:              Saturday, September 16, 2023 6:38 PM
To:                Nalesnik, Brian; Brown, Sherece S; Lipman, Jennifer (CBSNews); Fearrington, Jennifer; Einsidler, Izzy; Lewis, Kyle; Duff, Kyla E; Spiegler, Ted; Palace, Guy; Thornes, Troy; Fennell-Walton, Dionne; Solomon, Lee; Campbell, Cindy; Houseman, Brian; Hawley, Alison; Golebiowski, Mike; Verdugo, Adam; Morse, Julie; Farhi, Arden; Newman, Jeff; Jefferson, Rick
Subject:           Re: What a busy and productive week!  THANK YOU

Great job, Sherece! And thank you everyone for all of your hard work!

is

**Brown, Sherece S**

| | |
|---|---|
| From: | Nalesnik, Brian |
| Sent: | Monday, January 8, 2024 7:21 PM |
| To: | Mills, Tanya; Berlin, Eric |
| Cc: | Train, Steph; Galloway, Anthony; Brennan, Allison; Brown, Sherece S; DCStudioBooking; Houseman, Brian; Hudson, Tiffany; Kessler, Jon; Lebel, Marty; Sandza, Allison; stream-desk; stream-editorial-leads; Hawley, Alison; Jefferson, Rick |
| Subject: | RE: Great Work : DC touchscreen |

You are very welcome!  I'm thrilled that you were happy with the production.  Sherece has been working hard on her craft and it shows.  Looking forward to the next project!

B

June 18, 2024

To whom it may concern:

Sherece Brown is a skilled and critical member of the CBS Evening News staff. In the several years that we have worked together, she has proven to be adaptable across multiple roles and a quick learner of our state-of-the-art automated control room software. Over the past year, in her role as Associate Director, we have worked closely to develop and enhance our CG process, ensuring proper style and workflow with producers across the organization. She also ensures each story, segment, and break is properly timed, while thinking on the fly when changes happen in real-time during the live broadcast. Sherece is calm under pressure and always upholds the highest standards for the Evening News and the network. She would be an excellent addition to your control room and newsroom staff.

Please reach out if you have any questions.

Patrick Becker
Senior Producer
CBS Evening News with Norah O'Donnell

69.     In or around 2019, PARAMOUNT became Plaintiff's joint employer, as part of its acquisition of CBS.

70.     Despite her excellent work record and litany of accomplishments, Plaintiff was forced by CBS and PARAMOUNT to endure discrimination at the highest levels.

71.     In a pattern and culture of discriminatory and retaliatory harassment based on Plaintiff's protected characteristics and protected conduct, Defendants have made adverse employment decisions with respect to Plaintiff's job at CBS and PARAMOUNT.

72.     Plaintiff asserts that the aforementioned discriminatory and retaliatory pattern and culture included being passed over for upper-level promotions and the denial of equitable and/or equal training and other job opportunities within CBS and PARAMOUNT.

73. By way of example, despite Plaintiff's unimpeachable work performance, Plaintiff's position as Associate Director was her glass ceiling, imposed upon her by CBS and PARAMOUNT.

74. Due to Plaintiff's protected characteristics and because Plaintiff engaged in protected activity by complaining about CBS and PARAMOUNT's illegal, discriminatory conduct, she was given adverse employment decisions including a wrongful termination.

75. Plaintiff asserts that CBS NEWS as a workplace is pervaded by a pattern and culture of further instances of stereotyping, harassment, disparate and prejudicial treatment, denial of equal opportunities and benefits – all based on discrimination against Black and other non-White employees.

76. Plaintiff asserts that following Plaintiff's hiring, CBS, NALESNIK, JEFFERSON, MCKEON, RODERICK, KLOS, HAGER, HAWLEY, and FORAN each engaged in a pattern and practice of discrimination against Black and non-white, non-Caucasian, and other protected employees, and employees who engage in protected conduct on behalf of themselves and other CBS and PARAMOUNT employees.

77. Plaintiff asserts that, from the beginning, and continuing throughout the duration of Plaintiff's employment, she was subjected to a pattern and practice of discrimination, harassment, and hostile work environment based upon her race and color, and in retaliation for complaining about Defendants' discriminatory actions and other wrongdoing.

78. It is clear from the severe and pervasive nature of NALESNIK's, HAWLEY's and FORAN's conduct that they acted with the approval of CBS and PARAMOUNT's highest-ranking employees, including JEFFERSON, MCKEON, KLOS, RODERICK, and HAGER who were aware of the discriminatory treatment and who actively enabled HAWLEY's and FORAN's illegal misconduct, including protecting their positions at CBS and PARAMOUNT.

79. It is clear based on the following facts that, but for Plaintiff's race and color, she would not have been subjected to the same discriminatory and harassing treatment, and adverse employment decisions.

80. For example, in or around November 2020, Plaintiff was involuntarily transferred from New York to Washington DC, as a condition of employment.

81. This was a pretext to her termination given that she was purportedly moved to DC because her show *CBS Evening News* was going to go there, only to be told that the show would remain in NYC.

82. Defendants were aware that Plaintiff had to incur costs to stay in D.C. for this position and simultaneously maintain her residence in NYC.

83. Other similarly situated non-Black employees did not have to bear both the cost of maintaining a home in NYC and the expense of living in Washington, D.C.

84. By putting Plaintiff in a position where she had to incur the added cost of living in D.C. while maintaining a NYC residence, Defendants hoped to force Plaintiff into quitting.

85. This is not something that Defendants did to non-Black employees.

86. Upon information and belief, non-Black employees who are forced to relocate are given compensation to cover the costs of the relocation and not allowed to bear the costs alone.

87. As an example, Corporate Defendants paid for NALESNIK's rent for an entire year while he worked in D.C.

88. At the time NALESNIK was asked to move to D.C., it was in 2023.

89. At the time he moved, NALESNIK was a Director for the evening news.

90. During the end of 2023-2024 that NALESNIK relocated to D.C., he was fully reimbursed for his travel expenses and lodging expenses while in D.C. for an almost year and a half period.

20

91.    Plaintiff did not have her D.C. related expenses paid for in this manner.

92.    Similarly, NALESNIK was allowed to move back to N.Y. upon his request in 2025.

93.    Plaintiff was denied this same request to move back to N.Y. multiple times including November 2024 prior to her wrongful termination.

94.    HAWLEY was another example of Defendants paying for relocation expenses of Caucasian employees who had NY roots related to business travel from N.Y. to Washington D.C.

95.    When N.Y.-based HAWLEY was asked to relocate to D.C. in connection with her work with CBS, HAWLEY was reimbursed for her travel and lodging unlike Plaintiff.

96.    Defendants made racially discriminatory decisions to reimburse HAWLEY and NALESNIK for their D.C. relocation expenses and lodging while denying Plaintiff reimbursement of her D.C. expenses, a disparity that was directed at, and had its impact upon, Plaintiff's employment and compensation at the D.C. Bureau.

97.    As another example, Plaintiff was subjected to disparate workload as compared to similarly situated non-Black and Caucasian employees.

98.    In New York, the news programing used both a Production Associate (PA) and a control room Associate Director.

99.    When Plaintiff moved to Washington D.C., Defendants gave Plaintiff the added responsibility of handling both positions. This is something that similarly situated, non-Black employees were not required to do.

100.    For example, in 2023-2024 when Plaintiff was doing the added responsibility of a PA, a Caucasian male, Sheldon Schwartz ("Shelly") who was also an Associate Director like Plaintiff, was able to employ and assign a Production Assistant, to do fonts and/or graphics for his shows.

101. As another example, during the same period, white male, Scott Berger, was another Associate Director like Plaintiff, who was able to employ and assign a Production Assistant to do fonts and/or graphics for his shows.

102. Defendants' decisions to staff Berger's and Schwartz's shows with PA's for graphics and fonts while denying Plaintiff the ability to staff her shows with PA's constituted disparate treatment that was directed at, and had its impact upon, Plaintiff's employment at the D.C. Bureau.

103. When Plaintiff moved to D.C., she regularly travelled to New York City bi-monthly to attend healthcare appointments with her physician, OBGYN, and dentist.

104. As a result of this added burden, the terms and conditions of Plaintiff's job changed for the worse.

105. She was no longer on an equal playing field with other similarly situated, non-Black employees. Now, in addition to the many responsibilities of an Associate Director, including performing timing functions, Plaintiff also needed to build fonts and graphics that the non-Black Associate Directors did not have to do.

106. The added workload for Plaintiff put an overwhelming burden on her that was not required for her non-Black counterparts.

107. This added burden negatively altered the terms and conditions of Plaintiff's job.

108. Plaintiff was also discriminated against compared to her non-Black comparators in compensation.

109. After being assigned the duties of both the Associate Director and the Production Associate while in D.C., she requested compensation for having both roles and was denied.

110. When Plaintiff was on duty, she had to handle both the AD role and the PA role without extra compensation.

111. When Plaintiff was not working, Defendants would assign both a PA and an AD to staff the show paying them both.

112. In this fashion, during the 2023-2024 years, Plaintiff was paid the same or less than Schwartz and Berger despite the fact that Schwartz and Berger performed less work than Plaintiff.

113. As another example of the discriminatory treatment Plaintiff faced, before Plaintiff's first show and introduction to the DC bureau, Defendant HAWLEY invited Plaintiff to Sunday brunch.

114. When Plaintiff met HAWLEY, she looked Plaintiff up and down and said, "WELL WE KNOW YOUR NAILS ARE FAKE WHAT ELSE IS FAKE ON YOU?"

115. HAWLEY proceeded to make discriminatory comments by referring to Plaintiff's hair style as "BLACK HAIR."

116. HAWLEY's comments and conduct were clearly discriminatory, given non-black, non-African American employees were not subjected to racially offensive statements about hair and nails in this manner.

117. Plaintiff immediately felt humiliated and intimidated by HAWLEY's discriminatory comments.

118. Plaintiff immediately engaged in protected conduct by complaining directly to HAWLEY about her comments.

119. Despite Plaintiff's protected conduct, on several occasions on diverse dates throughout Plaintiff's employment following this complaint, HAWLEY subjected Plaintiff to further discriminatory comments about her appearance, including disparagingly referring to Plaintiff's nails as "CLAWS."

120. Referring to Plaintiff as being something that was sub-human negatively impacted the terms and conditions of her employment by marginalizing her within the organization.

121. HAWLEY's comments and conduct were clearly discriminatory, given non-black, non-African American employees were not subjected to dehumanizing comments likening their appearance to animals or beasts in this manner.

122. Therefore, clearly but for Plaintiff's race and color, HAWLEY would not have made these comments, nor engaged in this conduct.

123. Additionally, HAWLEY engaged in a course of conduct intended to frustrate Plaintiff's attempts to complete necessary workplace training, including taking vacations from work to prevent Plaintiff from receiving her training.

124. In a pattern, practice, and culture of harassment based on Plaintiff's race and color, Defendants have made discriminatory comments towards, and adverse employment decisions with respect to, Plaintiff's job opportunities at CBS.

125. By way of example, on multiple occasions, HAWLEY, FORAN and by extension CBS and PARAMOUNT, withheld job opportunities, couching the racially discriminatory misconduct in terms of "experience", including pretextual statements like "FACE THE NATION NEEDS A 'SEASONED' DIRECTOR" and "[HAGER] WANTS SOMEONE WITH 20 YEARS' EXPERIENCE."

126. These job opportunities were then given to CBS and PARAMOUNT employees who were all Caucasian.

127. As a result, between 2021 and through to her termination, Plaintiff engaged in multiple instances of protected conduct by complaining to Defendants' supervisors and its Human Resources department about HAWLEY's and FORAN's discriminatory, and harassing misconduct.

128. By way of example, on or about January 10, 2021, Plaintiff emailed HAGER and KLOS, PARAMOUNT executives imbued with supervisory authority and tasked with supervisory responsibility, to complain about FORAN's misconduct.

On Jan 10, 2021, at 12:13 PM, Brown, Sherece S
<BrownS@cbsnews.com> wrote:

Hi Mary,

I am enjoying what Ive been tasked to do down in CC.
Everyone down there has been really helpful.
I have been getting signals that I am doing a good job.
I would appreciate your feed back.
Laura makes me feel like I'm not doing a good job, and I
don't appreciate it. I was yelled at over maccurty today,
I find that demeaning.

I respect you and I am open to your feedback.

Thank you,
Sherece
516-406-9579

129. Despite Plaintiff's protected activity, HAGER took no immediate or appropriate responsive corrective action, in total dereliction of her supervisory responsibilities.

130. At all times material, as a matter of company policy, the Defendants' Human Resources department was tasked with conducting a thorough, impartial investigation in response to Plaintiff's complaint.

**The Investigation**
Any reported allegations of harassment, discrimination or retaliation will be investigated fairly, immediately, thoroughly and impartially by the Human Resources Department, the Paramount Employee Relations Department, Paramount's Compliance Department, or another appropriate party in a manner that provides all parties appropriate due process and reaches conclusions based on the evidence collected. This procedure will apply regardless of the manner in which the individual made the complaint. Upon receipt of the complaint, the designated investigator will conduct a prompt review of the allegations. The investigation may include, but is not limited to, individual interviews with the complainant, other parties involved and, where necessary, with individuals who may have observed the alleged conduct or may have other relevant knowledge. All individuals, including managers and supervisors, are required to cooperate with any internal investigation of harassment, discrimination or retaliation. Individuals must respond truthfully, promptly and fully to all inquiries made by the designated investigator. Withholding responsive information, providing incomplete information or attempting to mislead or misdirect any investigation (or encouraging or pressuring others to do so) may result in disciplinary action up to and including termination. As part of its investigation, Paramount will review relevant documents (if any), which may include without limitation e-mails and text messages.

Each investigation will be tracked for reasonable progress and documented in writing, which will include documents or information reviewed, individuals interviewed, any relevant prior incidents, and how the complaint is resolved. Each complainant will be notified following the completion of the investigation and will be advised of the results of the investigation, whether corrective action was taken and the right to file a complaint externally. Individuals about whom a complaint was made will be notified as well. Paramount will endeavor to complete the investigation as soon as possible, and will notify the complainant if it is unable to do so.

Confidentiality will be maintained throughout the investigatory process to the extent consistent with a thorough investigation, appropriate corrective action and applicable law.

131. Despite Plaintiff's protected activity, Defendants took no immediate or appropriate corrective action, in total dereliction of their duties.

132. HAGER and Defendants' actions in this regard were clearly discriminatory, as similarly situated non-black, non-African American employees did not have their legitimate complaints of workplace misconduct, including discriminatory comments and conduct, blatantly ignored, in this manner.

133. For example, Eliza Dushku, a Caucasian CBS employee complained about workplace discrimination and her complaint was investigated by the company. As a result of her complaints,

25

CBS agreed to pay her $9.5 Million dollars. See *CBS Paid the Actress Eliza Dushku $9.5 million to Settle Harassment Claims, New York Times* 12-13-2018.

134. For another example, Cybill Shepherd, another Caucasian female former CBS employee complained about workplace discrimination by Les Moonves and her complaint was investigated by CBS.

135. In all, CBS investigated the complaints of nearly 24 Caucasian women employees or past employees who raised complaints of workplace discrimination about Les Moonves. *The Year of Reckoning at CBS: Sexual Harassment Allegations and Attempts to Cover Them Up, New York Times,* December 17, 2018.

136. Similarly, CBS investigated complaints of workplace discrimination against straight white male employees made by Caucasian male Brian Beneker. See, *CBS Settles Discrimination Lawsuit Over Alleged Racial Quotas for Hiring TV Writers*, *The Hollywood Reporter,* April 25, 2025.

137. HAGER, CBS, and PARAMOUNT's discriminatory refusal to take corrective action in response to Plaintiff's complaints negatively impacted the terms and conditions of Plaintiff's employment by emboldening CBS and PARAMOUNT's employees, including HAWLEY and FORAN, to subject Plaintiff to further discriminatory, harassing, and retaliatory practices.

138. By way of example, FORAN and HAWLEY began routinely subjecting Plaintiff to unsolicited notes on her workplace performance, and inaccurate, negative accusations of workplace unprofessionalism, often, deliberately, in the presence of other employees.

139. HAWLEY and FORAN's actions in this regard were clearly discriminatory, as similarly situated non-black, non-African American employees were not subjected to public ridicule or berated in this manner.

140. HAWLEY and FORAN's actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, thereby negatively impacting her ability to perform her job and severely, negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

141. Plaintiff was extremely frustrated with HAGER and Defendants' failure to investigate her complaints. As a result of HAGER and Defendants' Human Resources department's failure and/or refusal to take corrective action, Plaintiff engaged in multiple instances of protected conduct, including complaining directly to JEFFERSON, a PARAMOUNT Vice President, in or around June 2022, and RODERICK, a PARAMOUNT Vice President of Employee Relations, in or around July 2022, about FORAN's discriminatory, retaliatory misconduct.

142. Despite Plaintiff's protected activity, CBS and PARAMOUNT took no immediate or appropriate corrective action, and at no point did CBS or PARAMOUNT reprimand the CBS and PARAMOUNT employees responsible for Plaintiff's discrimination and harassment.

143. Instead, CBS and PARAMOUNT oversaw a sham investigation ostensibly into Plaintiff's complaint, the foregone conclusion of which was solely for the protection and benefit of the company.

144. CBS and PARAMOUNT's actions in this regard were clearly discriminatory as similarly situated white, and Caucasian employees did not have their legitimate complaints of workplace misconduct, including discriminatory comments and conduct, harassment, and retaliation, blatantly ignored in this manner.

145. CBS and PARAMOUNT's conduct in this regard was clearly retaliatory, given the temporal proximity to Plaintiff's protected conduct.

146. CBS and PARAMOUNT's actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, intended to have a chilling effect on Plaintiff's ability to engage in protected conduct, thereby negatively impacting her ability to perform her job and severely, negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

147. CBS and PARAMOUNT's refusal to take corrective action in response to Plaintiff's complaint negatively impacted the terms and conditions of Plaintiff's employment by emboldening CBS and PARAMOUNT employees, including HAWLEY and FORAN, to subject Plaintiff to further discriminatory, harassing, and retaliatory practices.

148. CBS and PARAMOUNT were clearly in violation of PARAMOUNT company policy asserting that "confidentiality will be maintained throughout the investigatory process", given FORAN's retaliatory misconduct against Plaintiff following Defendants' sham investigation.

149. FORAN reignited her targeted campaign of discriminatory harassment against Plaintiff, including, *inter alia*, spying on Plaintiff through Defendants' Information Technology and Security departments, circulating false rumors about Plaintiff's attendance and tardiness amongst Plaintiff's co-workers and supervisors, deliberate exclusion from workplace email distribution, and deliberate obstruction of Plaintiff's work and work opportunities with CBS and PARAMOUNT, culminating in the submission of pretextual allegations against Plaintiff, memorialized in the form of a scandalous, defamatory email accusing Plaintiff of "continued lateness" in or around January 2023, specifically to diminish Plaintiff's well-earned and prestigious reputation.

From: Foran, Laura <ForanL@cbsnews.com>
Sent: Sunday, January 15, 2023 11:59 AM
To: Brown, Sherece S <BrownS@cbsnews.com>
Cc: Sharief, Islam <ShariefI@cbsnews.com>
Subject: RE: A few notes from this morning

Hello Sherece,

I am writing to follow up on our conversation in CC this morning about your continued lateness on Sunday mornings, despite being reminded several times that the crew call time is 6 AM ET, unless otherwise advised. I noted last week and again today, you are arriving more than 15 minutes after the call time and that cannot

28

continue. As I have explained, I come to CC usually just a few minutes after 6 AM, sometimes a little later, but typically before 6:15 AM, to distribute the Remote Notes, Rem Sheet & Rundown, and I take time to go over those sheets to make sure we're all on the same page for the morning, and it would be helpful for you to be there for that review. Additionally, there is a Control Room meeting at 6:30 AM that I would also like you and everyone in CC to participate in, if only to listen in, but there is important information shared in that meeting as well, and an opportunity to ask questions if anything needs more clarity.

Please reply to confirm receipt and compliance going forward, thank you.

All the best,
Laura

LAURA FORAN | CBS News | Operations Manager | FACE THE NATION | Tech Manager | ForanL@cbsnews.com | Mobile: 202-760-5119

150.    FORAN's actions in this regard were clearly discriminatory, given that similarly situated non-black, non-African American employees were not subjected to untrue, unreasonable, unjustifiable, pretextual accusations of work-related tardiness, in this manner.

151.    FORAN's actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, thereby negatively impacting her ability to perform her job and severely, negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

152.    On or about January 18, 2023, Plaintiff engaged in further protected activity, complaining directly to RODERICK, a PARAMOUNT Vice President of Employee Relations, imbued with supervisory authority and tasked with supervisory responsibility, to complain about FORAN's misconduct, including harassment.

**Brown, Sherece S**

| | |
|---|---|
| From: | Brown, Sherece S |
| Sent: | Wednesday, January 18, 2023 9:22 PM |
| To: | Roderick, Michael Garry |
| Subject: | FW: Please add |

Hi Michael,

I've mentioned to you yesterday that I do take 15 min to get myself mentally prepared before I enter the building at 6:am on Sundays.
As I stated before I need to mentally prepare for the disturbing behavior that I continuously have and had to endure for the past two years.
This constant harassment disturbs my mental health and gives me anxiety.
Thank you for forwarding the "EAP" Now to help myself I will for sure be in the building before 6am on Sundays. I do not like drama at all.

Thank you,

~Sherece

153. Despite Plaintiff's protected activity, RODERICK took no immediate or appropriate corrective action, in total dereliction of his duties and position as a CBS and PARAMOUNT Vice President of Employee Relations.

154. RODERICK's actions in this regard were clearly discriminatory, as similarly situated non-black, non-African American employees did not have their legitimate complaints of workplace misconduct, including discriminatory, harassing comments and conduct, blatantly ignored, in this manner.

155. Despite Plaintiff's protected activity, CBS and PARAMOUNT took no immediate or appropriate corrective action, and at no point did PARAMOUNT or CBS reprimand the PARAMOUNT and CBS employees responsible for Plaintiff's discrimination and harassment, including FORAN.

156. CBS and PARAMOUNT's actions in this regard were clearly discriminatory as similarly situated white, and Caucasian employees did not have their legitimate complaints of workplace misconduct, including discriminatory conduct and harassment blatantly ignored in this manner.

157. CBS and PARAMOUNT's conduct in this regard was clearly retaliatory, given the temporal proximity to Plaintiff's protected conduct.

158. CBS and PARAMOUNT's actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, intended to have a chilling effect on Plaintiff's ability to engage in protected conduct, thereby negatively impacting her ability to perform her job and severely, negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

159. CBS and PARAMOUNT's refusal to take corrective action in response to Plaintiff's complaint negatively impacted the terms and conditions of Plaintiff's employment by emboldening CBS and

PARAMOUNT employees, including FORAN, to subject Plaintiff to further discriminatory, harassing, and retaliatory practices.

160. FORAN's campaign of discriminatory harassment against Plaintiff created a hostile work environment. The harassment was non-stop, obsessive, and negatively impacted Plaintiff's employment at CBS and PARAMOUNT.

161. As a direct result of Defendants' misconduct, FORAN's campaign of discriminatory harassment against Plaintiff, including attempts at professional sabotage and muddying Plaintiff's workplace reputation, continued unabated.

**Brown, Sherece S**

| | |
|---|---|
| From: | Brown, Sherece S |
| Sent: | Thursday, July 13, 2023 2:41 PM |
| To: | Jefferson, Rick |
| Cc: | Hawley, Alison |
| Subject: | July 6, 2023 |

Hello Rick,

I am just looping you in on a strange event that happened July 6, 2023.

Allie Sandza reached out to me about a pretape she needed me to Direct, that Thursday July 6.
When I got in that morning I went directly to her office on the second floor.
We were discussing a few things about the pre-tape and future ideas she had about lighting on the America decides set.

While I was in her office I got a text message from Dion alerting me to the fact that Laura Foran was looking for me feverishly, and that she asked about my in-time.
Laura then sends me a text, as shown in the image below. Almost immediately, I see her walk by Allie's office.
Maybe about an hour later I head to the front to grab coffee. One of the security people informed me that Laura asked them for the time I entered the building
And instructed them to show her when I swiped my badge at the front door. The security person informed her that I entered behind someone. Laura then made the remark
"Well that won't help her"

I went up to the IT department and I was told there, that Laura asked to see when I swiped my badge to enter the building.

I would characterize this as harassment, I am hoping this behavior doesn't continue.

Thank you for your time.

162. Despite Plaintiff's protected activity, RODERICK and HAWLEY took no immediate or appropriate corrective action, in total dereliction of their duties and positions.

163. RODERICK and HAWLEY's actions in this regard were clearly discriminatory, as similarly situated non-black, non-African American employees did not have their legitimate complaints of workplace misconduct, including discriminatory comments and conduct, blatantly ignored, in this manner.

164. Despite Plaintiff's protected activity, CBS and PARAMOUNT took no immediate or appropriate corrective action, and at no point did PARAMOUNT or CBS reprimand the PARAMOUNT and

CBS employees responsible for Plaintiff's discrimination and harassment, including FORAN and HAWLEY.

165. As a direct result of Defendants' misconduct, HAWLEY and FORAN's campaign of discriminatory harassment against Plaintiff, including ongoing and repeated attempts at professional sabotage and muddying Plaintiff's workplace reputation, continued unabated.

166. This encouraged other CBS and PARAMOUNT employees to discriminate and retaliate against Plaintiff.

167. By way of example, in or around the late summer of 2023, NALESNIK, DAGAN, CBS and PARAMOUNT forced Plaintiff to combine three separate positions (Graphics position + Font Position + Control Room AD position) into a single role but refused to offer additional compensation to reflect these additional responsibilities.

168. CBS and PARAMOUNT's actions in this regard are clearly discriminatory as non-black, non-African American employees are not financially short-changed by Defendants or saddled with unpaid, extra duties and responsibilities in this manner.

169. CBS and PARAMOUNT'S failure to compensate Plaintiff for performing all of these functions created an ongoing discriminatory unequal pay violation.

170. Caucasian Graphics, Font and ADs all received compensation for fulfilling each of the duties associated with each position, whereas Plaintiff only received compensation for fulfilling the duty of AD but not for Font and Graphics.

171. Schwartz and Berger (white males) were treated more favorably as they were not required to fulfill these similar job duties despite being in the same position as Plaintiff.

172. By way of another example, in or around September 2023, HAWLEY told Plaintiff that Historically Black Colleges and Universities are places "WHERE ALL THE GIRLS ARE NAMED SHANIQUA."

173. HAWLEY's comment was based on despicable stereotypes about black, and African American women. But for Plaintiff's race and color, HAWLEY would not have made this comment.



**WIKIPEDIA**
The Free Encyclopedia

## Shaniqua

Shaniqua is a female given name in the English language, originating in the African-American community, gaining popularity beginning in the 1970s and peaking in the early 1990s.[1][2]

It is often given as the prototypical example of a *ghetto name*, names likely to belong to low-income African-Americans.[3][4][5] It has been used in racism-related incidents to stereotype rude black women.[6][7]

174. Plaintiff immediately felt shocked, humiliated, and intimidated by HAWLEY's misconduct.

175. HAWLEY's actions were clearly discriminatory, given that non-black, non-African American employees were not subjected to similarly degrading stereotypes.

176. HAWLEY's actions had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, thereby negatively impacting her ability to perform her job and severely, negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

177. On or about January 12, 2024, Plaintiff engaged in further protected activity regarding HAWLEY's misconduct, ensuring to direct her verbal complaint to HAWLEY. Plaintiff complained specifically about being held to a different standard than her non-black, non-African American peers.

178. Despite Plaintiff's protected activity, CBS and PARAMOUNT took no immediate or appropriate corrective action, and at no point did PARAMOUNT or CBS reprimand the PARAMOUNT and CBS employees responsible for Plaintiff's discrimination and harassment, including FORAN and HAWLEY.

179. As a result, on or about January 13, 2024, Plaintiff engaged in even further protected activity regarding HAWLEY's misconduct, ensuring to direct her complaint to JEFFERSON, as CBS' and PARAMOUNT's Employee Relations executive.

180. Despite Plaintiff's protected activity, CBS and PARAMOUNT took no immediate or appropriate corrective action, and at no point did PARAMOUNT or CBS reprimand the PARAMOUNT and CBS employees responsible for Plaintiff's discrimination and harassment, including NALESNIK, FORAN, and HAWLEY.

181. By way of example, on or about January 31, 2024, HAWLEY and NALESNIK dismissed the very idea of Plaintiff receiving a promotion to the position of Backup Director for the CBS and PARAMOUNT news program, Face the Nation, due to Plaintiff's race.

182. At all times material, Plaintiff was qualified for this position of Face the Nation Backup Director.



183. Additionally, CBS and PARAMOUNT announced Mr. Eric Guanajuato (White Skinned male) as the new show's Director, claiming to have decided on him instead of Plaintiff.

184. The pretextual reason given was because Mr. Guanajuato is an IBEW member whereas Plaintiff is not, and that only IBEW members can direct for the streaming network.

185. This justification is clearly pretextual, given that Plaintiff had been directing for the streaming network since she arrived at Defendants' DC Bureau.

186. This adverse employment decision was clearly discriminatory, given non-Black CBS and PARAMOUNT employees are not precluded from promotions for which they are qualified based on pretextual, arbitrary, union-related excuses in this manner.

187. By way of another example, on or about February 8, 2024, NALESNIK subjected Plaintiff to an unjustifiable and unreasonable verbal attack in the presence of Plaintiff's co-workers and colleagues.

188. Plaintiff immediately felt shocked, humiliated, and intimidated by NALESNIK's misconduct.

189. NALESNIK's conduct in this regard was clearly discriminatory, given Plaintiff's similarly situated non-black, non-African American coworkers were not treated in this manner.

190. NALESNIK's actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, intended to have a chilling effect on Plaintiff's ability to engage in protected conduct, thereby negatively impacting her ability to perform her job and severely negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

191. By way of yet another example, on or about February 9, 2024, a visibly irate FORAN marched over to Mr. Sharief's office, where she immediately began throwing a tantrum, which included a number of concerning comments evincing FORAN's obsessive desire to sabotage Plaintiff's work efforts.

192. Plaintiff, whose desk was in the same area as Mr. Sharief's office, was subjected to this violent tantrum in full view of CBS and PARAMOUNT co-workers and subordinates, who could clearly

35

hear FORAN's unprofessional, abusive comments, including "I HOPE THE EVENING FAILS ITS ELC LAUNCH OF AUTOMATION!"

193. FORAN's actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace and were clearly intended to diminish Plaintiff's professional reputation in the eyes of Plaintiff's CBS and PARAMOUNT colleagues, thereby negatively impacting her ability to perform her job and severely, negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

194. Plaintiff immediately felt shocked, humiliated, and intimidated by FORAN's misconduct.

195. FORAN's outburst was deafening and caught the attention of everyone in the office, and Plaintiff could hear that it was severely abusive, intimidating, and so far beyond the bounds of a professional workplace, that FORAN later emailed Plaintiff in an attempt at justifying her misconduct.

> **Today outside of Islam's office**
>
> Foran, Laura <ForanL@cbsnews.com>
> Fri 2/9/2024 9:22 PM
> To:Brown, Sherece S <BrownS@cbsnews.com>
>
> Hi Sherece,
>
> I am writing to apologize to you for what you surely heard me say outside of Islam's office today about Evening News. Not only was it unacceptable and uncalled for, it was also untrue. I would not genuinely want anything to go wrong on an Evening News broadcast, technical or otherwise, and particularly not anything avoidable. I was speaking out of frustration, and that is no excuse. The truth is I have been trying very hard to do and be better, and today I did not try hard enough. I am disappointed in myself and understand if you are, too.
>
> I hope you will accept my apology and believe me when I say I will work harder to do better.
>
> All the best,
> Laura
>
> Laura Foran | Tech Manager | CBS News | Face the Nation | 202-760-5119
>
> Sent from my stupid smartphone.

196. As a result of HAWLEY, FORAN, and NALESNIK's misconduct, around or about a week later, Plaintiff engaged in further protected conduct by complaining directly to NALESNIK.

197. Despite Plaintiff's protected conduct, NALESNIK failed to take any immediate or appropriate corrective action. Instead, NALESNIK victim-blamed Plaintiff.

198. NALESNIK's actions in this regard had the purpose and effect of subjecting Plaintiff to intimidation and humiliation in the workplace, intended to have a chilling effect on Plaintiff's

36

ability to engage in protected conduct, thereby negatively impacting her ability to perform her job and severely negatively altering her work environment and the terms and conditions of her employment at CBS and PARAMOUNT.

199. In or around March 2024, Plaintiff specifically requested and applied for the position of director of the Saturday Morning Show, a New York-based program.

200. Her application and request was initially granted by Defendants and JEFFERSON.

201. The show was produced in New York and would have required Plaintiff to move back to New York to direct the show.

202. In connection with her application, on or around March 15, 2024, HAWLEY promised Plaintiff that she would set up a training and observance opportunity for Plaintiff to visit Corporate Defendants' New York office to observe the "Saturday Morning Show" where it was produced.

203. The training was set up with the understanding that Plaintiff would get the directorship of the NY based show.

204. However, HAWLEY and JEFFERSON deliberately failed and/or refused to act upon this promise to award the directorship of the NY based show to Plaintiff.

205. The allegations in the foregoing paragraphs 213 through 216, and the allegations in paragraphs 216 through 219 below concerning the Tooley interaction, are pleaded solely as relevant background evidence and to provide context for the events that followed, including the timeline of Plaintiff's protected activity and Defendants' retaliatory and harassing conduct at the D.C. Bureau. Plaintiff's claims arising from Defendants' failure to hire her for the *Saturday Morning Show* directorship, and retaliation related thereto, are currently pending in a separate New York Action, and Plaintiff does not assert those claims, or seek relief upon them, in this action.

206. In or around March 2024, Plaintiff engaged in further protected conduct by complaining to her union representative, Mr. Berger, about Defendants' discriminatory conduct.

207. On or about March 20, 2024, Mr. Berger engaged in further protected conduct on Plaintiff's behalf.

208. Despite Plaintiff's protected activity and Mr. Berger's protected activity on Plaintiff's behalf, CBS and PARAMOUNT took no immediate or appropriate corrective action, and at no point did PARAMOUNT or CBS reprimand the PARAMOUNT and CBS employees responsible for Plaintiff's discrimination and harassment, including FORAN. Defendants' actions in this regard were clearly discriminatory, as similarly situated non-black, non-African American employees did not have their legitimate complaints of workplace misconduct, including discriminatory comments and conduct, blatantly ignored, in this manner.

209. Rather, in response to Plaintiff's protected activity, in or around April 2024, Plaintiff discovered HAWLEY and Defendants' plans to eliminate her D.C.-based role entirely.



210. On or about April 11, 2024, Mr. Berger engaged in even further protected activity regarding CBS and PARAMOUNT's adverse employment decision to eliminate Plaintiff's position.

211. Further, on or about April 26, 2024, Sampson, Mr. Sharief, and HAWLEY removed Plaintiff's access to CBS and PARAMOUNT's D.C. Bureau control room as of May 6, 2024, and advised Plaintiff that her position would be eliminated.

212. CBS and PARAMOUNT's actions in this regard were clearly discriminatory as similarly situated non-black, non-African American employees did not have their legitimate complaints of workplace misconduct, including discriminatory comments and conduct, harassment, and retaliation, blatantly ignored, or have their jobs unnecessarily eliminated in this manner.

213. CBS and PARAMOUNT's conduct in this regard was clearly retaliatory, given the temporal proximity to Plaintiff's protected conduct.

214. As a result of CBS and PARAMOUNT's failure and/or refusal to take corrective action, Plaintiff was subjected to further acts of retaliatory misconduct, and harassment all with the purpose and effect of humiliating and intimidating Plaintiff, thereby negatively affecting the terms of her employment.

215. From around or about May 30, 2024, to around or about June 3, 2024, Plaintiff attended Corporate Defendants' New York City office working on the "Trump Trial Special Report." During this time, Corporate Defendants' New York Director, Technical Operations & Scheduling Strategy, Ms. Shannon Tooley ("Ms. Tooley"), stopped Plaintiff in the hall and indicated she wanted to hire Plaintiff for CBS and PARAMOUNT's office in New York City, as a Director.

216. This potential opportunity represented a potential promotion for Plaintiff.

217. Ms. Tooley indicated that she heard great things about Plaintiff, before advising that she was limited to suggestions in meetings, but the decision was ultimately HAWLEY's. Ms. Tooley also went on to say, "If [Plaintiff] would resign and come back as a freelancer," she could also put Plaintiff in position for entertainment directing options in New York.

39

218. Shortly thereafter, HAWLEY mentioned that she spoke to Corporate Defendants' New York Scheduling Manager, Ms. Shannon Tooley, and Mr. Tom LaVecchia, CBS NEWS' lead director ("Mr. LaVecchia"), regarding an opportunity for Plaintiff in New York City.

219. By way of example, on May 22, 2024, NALESNIK subjected Plaintiff to an unwarranted, unreasonable and violent tantrum, including false, pretextual allegations regarding Plaintiff's workplace attendance. NALESNIK's comments immediately left Plaintiff feeling segregated, alone, and unsupported.

220. By way of another example, around or about July 22, 2024, NALESNIK stopped inviting Plaintiff to direct pre-show items, instead offering directing opportunities to Plaintiff's less experienced, less qualified, non-black, non-African American stand-in and trainee, at a financial cost to Plaintiff. Plaintiff was a staff employee with more CBS and PARAMOUNT seniority than the said freelance trainee.

221. NALESNIK's adverse employment decisions in this regard are clearly discriminatory, as similarly situated non-black, non-African American, and male employees do not have their access to financial opportunities withheld in this manner.

222. NALESNIK's adverse employment decisions in this regard are clearly retaliatory, given the temporal proximity to Plaintiff's protected conduct.

223. By way of another example, around or about September 25, 2024, CBS and PARAMOUNT Associate Director, Mr. Mark White subjected Plaintiff to discriminatory comments, including that Plaintiff "must know how to twerk because [Plaintiff is] a black woman who attended Howard University" and that "Howard girls are twerking up and down U street."

224. Mr. White added that he only sees black women twerking on top of police cars and he does not see white women doing it.

225.    Mr. White proceeded to unprofessionally mimic what he identified as "black women twerking on top of police cars" by inappropriately gyrating in Plaintiff's direction.

226.    Mr. White's comments and conduct in this regard are clearly discriminatory, as similarly situated non-black, non-African American, and male employees were not subjected to disgusting stereotypes in this manner. Therefore, clearly but for Plaintiff's race and color, Mr. White would not have made these comments, nor engaged in this conduct.

227.    On or about November 20, 2024, Corporate Defendants pretextually and unlawfully terminated Plaintiff, and presented Plaintiff with a General Release and Waiver Agreement requiring her signature in exchange for continued receipt of certain work-related benefits.

**SHERECE BROWN**

Benefits Service Date: October 10, 2022

Last Day Worked: January 31, 2025

Separation Date: January 31, 2025

HR Representative: Jocelyn Cho, Human Resources Manager, 2020 M Street NW, Washington, DC 20006, jocelyn.cho@paramount.com

Following the Separation Date, you will receive the benefits outlined below, provided that you sign your separation agreement containing a **General Release of Claims** (the "Separation Agreement") against Paramount Global and all its subsidiaries and affiliates ("Company").

228.    The terms of Defendants' General Release and Waiver Agreement were unlawful and coercive, including an unlawfully broad non-disclosure provision that purported to restrict Plaintiff's rights in violation of applicable law.

229.    It is clear that this illegal, highly pressurized, and coercive attempt to have Plaintiff sign a general release was intended to minimize Defendants' exposure to liability from protected employees, for harboring a discriminatory and hostile work environment based on employees' protected characteristics.

230.   This adverse employment action was both retaliatory, given its temporal proximity to Plaintiff's protected conduct, but also discriminatory given that Corporate Defendants and their executive board members do not similarly interfere with the job functions of non-black, non-African American employees.

231.   Plaintiff asserts that Defendants engaged, and continue to engage, in a pattern and practice of discrimination against black employees, African American employees, and other legally protected employees.

232.   While Plaintiff's employment with CBS and PARAMOUNT was a harrowing, traumatic experience, the events complained of herein do[1] not[2] reflect[3] a unique[4] anomaly[5], as the totality of these acts comports and adheres[6] to a longstanding[7] pattern[8] of CBS[9] and PARAMOUNT[10] failing to prevent or address incidents of discrimination, failing to implement anti-discrimination policies, and failing to adequately train staff concerning civil rights issues, intentionally perpetrated by the CBS and PARAMOUNT management and executive officers against Plaintiff pursuant to illegally

[1]Meg James, "*Inside CBS' fraught investigation into allegations of racism and misogyny*",<https://www.latimes.com/entertainment-arts/business/story/2021-01-24/cbs-television-stations-peter-dunn-racism-sexism>, accessed January 31, 2024
[2]Ashley Cullins, "*Investigative Reporter Sues CBS for Gender and Age Discrimination*", <https://www.hollywoodreporter.com/business/business-news/michele-gillen-sues-cbs-gender-age-discrimination-1143483/>accessed January 31, 2024
[3]Sidley Gold, "*CBS Executive Claims Age and Race Discrimination Led to Termination*", available at <https://www.hg.org/legal-articles/cbs-executive-claims-age-and-race-discrimination-led-to-termination-54177>, accessed January 31, 2024
[4]EEOC, "*EEOC AND CBS SETTLE SEX BIAS SUIT FOR $8 MILLION*", available at <https://www.eeoc.gov/newsroom/eeoc-and-cbs-settle-sex-bias-suit-8-million>, accessed January 31, 2024
[5]Winston Cho, "'*60 Minutes' Producer Sues CBS Claiming Gender Discrimination Over Firing*", available at <https://www.hollywoodreporter.com/business/business-news/60-minutes-cbs-gender-discrimination-over-firing-1235614690/>, accessed January 31, 2024
[6]Tim Baysinger, "*ViacomCBS Slapped With Racial Discrimination Lawsuit by Former Employee*" <https://www.thewrap.com/viacomcbs-racial-discrimination-lawsuit/>, accessed January 31, 2024
[7]Anita Busch, "*Megan Colligan Claims Gender Bias And Discrimination As She Exits Paramount's Executive Ranks*", <https://deadline.com/2017/11/megan-colligan-gender-bias-claims-as-she-exits-paramount-pictures-executive-ranks-1202202765/>, accessed January 31, 2024
[8]Michael Zee, "CBS Sued by Former '60 Minutes' Producer Claiming Gender Discrimination", <https://variety.com/2023/tv/news/cbs-sued-60-minutes-producer-gender-discrimination-1235751686/>, accessed January 31, 2024
[9]Beck Law, P.C., "Gender Bias ad Discrimination At Paramount?"<https://www.californialaborandemploymentlaw.net/2018/gender-bias-discrimination-paramount/>, accessed January 31, 2024
[10]Dominic Patten, "*CBS & Paramount Global Hit With Discrimination & Retaliation  Suit by Ex-'60 Minutes' Producer; Alleges "Toxic Environment"  Against  Women  at  Work*",<https://uk.finance.yahoo.com/news/cbs-paramount-global-hit-discrimination022027059.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAAGMwwv1lH45Yj00dU9S6lMpB1YwItf7pa1VAuMxnQ2d7tLc4L9BxxNji6Gj0jSJWsIvgDwxs9sdZtRufdr6g3fGzcROBD9PVvdUXsiAGsdnw6z6iabUeeCHckXceqxhT9NKyy9JZrwiIdiVlL63Wv0MBrZx6zT_8tB1sKMhPRFR>, accessed January 31, 2024

42

reducing its work force and/or illegally terminating various employees and creating an intimidating, humiliating, hostile and offensive work environment in violation of 42 U.S.C. § 1981.

233. CBS and PARAMOUNT and their employees are complicit in the destruction of Plaintiff's career with CBS and PARAMOUNT, by creating a hostile work environment on the basis of her skin color, race, and for engaging in protected activity.

234. CBS and PARAMOUNT at all times failed to take corrective action to alleviate the discrimination, hostile work environment, and retaliation to which Plaintiff was subjected by their employees.

235. Upon information and belief, CBS and PARAMOUNT devised, implemented, and executed a scheme through which they gave disparate, preferential treatment and superior benefits to white, and Caucasian employees, while knowingly and intentionally denying equal treatment and benefits to black, African American, and other protected employees, including Plaintiff.

236. It is also clear from, *inter alia*, NALESNIK and FORAN's repeated pretextual accusations against Plaintiff about workplace lateness, that there was an ongoing attempt to paint Plaintiff as a bad performer and/or force Plaintiff out of CBS and PARAMOUNT.

237. It is clear from the severe and pervasive nature of NALESNIK, FORAN and HAWLEY's conduct that they acted with the approval of CBS and its highest-ranking employees, including MCKEON, HAGER, JEFFERSON, and RODERICK who were aware of the discriminatory treatment and who actively enabled FORAN and HAWLEY's illegal misconduct by not taking corrective action to stop it.

238. PARAMOUNT, CBS, and their employees are complicit in the destruction of Plaintiff's career with PARAMOUNT and CBS by creating a hostile work environment on the basis of her race, color, and for complaining about discrimination, harassment, and retaliation.

239. On an ongoing and continuing basis, Plaintiff was, and continues to be, subjected to wrongful, law-violating, punitive acts in a continuous campaign of harassment and vilification by CBS and PARAMOUNT and their agents and/or employees.

240. CBS and PARAMOUNT at all times failed to take corrective action to alleviate the discrimination, hostile work environment, and retaliation to which Plaintiff was subjected by their agents and/or employees.

241. To further the unlawful, hostile, and intimidating work environment and the disparate treatment of Plaintiff, MCKEON, HAGER, JEFFERSON, and RODERICK engaged in additional wrongful acts to create an atmosphere of intimidation to buttress and further CBS and PARAMOUNT's disparate treatment of Plaintiff, to interfere with Plaintiff's employment agreement with CBS and PARAMOUNT, and/or to tortiously force Plaintiff out of Plaintiff's employment with CBS and PARAMOUNT.

242. It is clear based on the above-described facts that, but for Plaintiff's race and color, she would not have been subjected to the same discriminatory and harassing treatment, and adverse employment decisions.

243. It is also clear that a defining factor of this atmosphere of intimidation is that CBS and PARAMOUNT's entire Human Resources department is unquestionably more concerned with protecting the company, rather than the company's employees.

244. Through their inaction and/or failure to take appropriate corrective action CBS, PARAMOUNT, and the entirety of their Human Resources departments abandoned Plaintiff and forced her to continue working in a discriminatory environment.

245. The above are just some examples of Defendants' unlawful discrimination of, harassment of, and retaliation against Plaintiff.

246. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured, and continues to endure, unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

247. As a result of Defendants' unlawful and discriminatory actions, Plaintiff felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

248. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured, and continues to endure, financial hardships and irreparable damage to her professional reputation.

249. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

250. Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Plaintiff notes that 42 U.S.C. § 1981 protects the right to make and enforce contracts, including independent contractor relationships. The DCHRA likewise extends its protections to individuals working as independent contractors. *See* D.C. Code § 2-1401.02(9).

251. Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

252. Plaintiff asserts that Defendants engaged, and continue to engage, in a pattern and practice of discrimination against black employees, African American employees, and employees who engaged in protected conduct, and other protected employees.

**TIMELINESS**

253. Claims under 42 U.S.C. § 1981 arising out of conduct occurring after the formation of the employment relationship are governed by the four-year federal statute of limitations set forth in 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). No administrative exhaustion is required.

254. All discrete discriminatory and retaliatory acts alleged herein occurring within four years of the commencement of this action — including, without limitation, the disparate workload, staffing, and compensation practices of 2022 through 2024; the denial of reimbursement parity afforded to NALESNIK in 2023 and 2024; the denial of the Face the Nation Backup Director promotion in January 2024; the withdrawal of directing opportunities in 2024; the denial of Plaintiff's requests to relocate; the elimination of Plaintiff's position; and Plaintiff's November 20, 2024 termination — are timely under Section 1981.

255. Conduct alleged herein occurring more than four years before the commencement of this action — including the November 2020 involuntary transfer and the events of 2021 — is pleaded as relevant background evidence of Defendants' discriminatory intent, pattern, and practice, and as component acts of the single, continuing hostile work environment alleged in the Third and Sixth Causes of Action. Because acts contributing to that hostile work environment occurred within the limitations period, the entire hostile work environment — including its earlier component acts — is actionable. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002).

256. Private causes of action under the DCHRA are subject to a two-year statute of limitations. D.C. Code § 2-1403.16(b)(1), as amended by the Fairness in Human Rights Administration Amendment Act of 2024, D.C. Law 25-300 (effective March 21, 2025). Before that amendment, claims of harassment under the DCHRA were already subject to a two-year limitations period.

257.   Plaintiff's DCHRA claims predicated upon, *inter alia*, the denial of Plaintiff's requests to relocate in November 2024, Plaintiff's November 20, 2024 termination, and the coercive General Release and Waiver Agreement presented to Plaintiff on or about that date, are timely: this action was commenced within two years of those acts, and the limitations period applicable to those acts had not expired when the two-year limitations period took effect.

258.   Plaintiff's DCHRA harassment claim is timely because harassment claims were subject to a two-year limitations period at the time the conduct occurred, and because the harassment constituted a single, continuing unlawful practice with component acts occurring within the limitations period, rendering the entire course of conduct actionable under the continuing violation doctrine. Earlier conduct is further pleaded as relevant background evidence of Defendants' discriminatory intent, pattern, and practice.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION
### *UNDER 42 U.S. CODE § 1981*
### (AGAINST ALL DEFENDANTS)

259.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

260.   42 U.S.C. § 1981 guarantees to all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. Plaintiff's employment relationship with Defendants constitutes a contractual relationship protected by Section 1981.

261.   Plaintiff is a black, African American woman and a member of a racial minority.

262.   Defendants' conduct, by and through their agents, in treating the Plaintiff in a manner unequal to other employees, intentionally and discriminatorily denied Plaintiff equal treatment on the basis

of her race in violation of 42 U.S.C. § 1981 in the terms, conditions and privileges of her employment, including by, *inter alia*: (a) subjecting Plaintiff to a disparate workload by requiring her to perform the combined duties of multiple positions that similarly situated non-Black employees were not required to perform; (b) compensating Plaintiff less than similarly situated non-Black employees, including Sheldon Schwartz and Scott Berger, who performed less work; (c) denying Plaintiff the staffing support afforded to similarly situated non-Black Associate Directors; (d) denying Plaintiff reimbursement of relocation, travel, and lodging expenses that were provided to non-Black and Caucasian employees, including NALESNIK and HAWLEY; (e) denying Plaintiff promotions and job opportunities for which she was qualified, including the Face the Nation Backup Director position in January 2024, based upon pretextual reasons; (f) withdrawing directing opportunities from Plaintiff and giving them to less experienced, less qualified non-Black employees; (g) denying Plaintiff's requests to relocate while granting the same requests by non-Black employees; (h) eliminating Plaintiff's position; and (i) terminating Plaintiff's employment on or about November 20, 2024.

263.    The discriminatory acts of the Defendants as described above were intentional and were motivated by Plaintiff's race. But for Plaintiff's race, Defendants would not have taken the foregoing adverse actions against her. *See Comcast Corp. v. National Ass'n of African American-Owned Media*, 589 U.S. 327 (2020). Defendants engaged in an ongoing and continuous pattern and practice of intentional discrimination against the Plaintiff.

264.    Each of the Individual Defendants is personally liable under Section 1981 because each personally participated in, directed, authorized, ratified, and/or was personally involved in the discriminatory conduct alleged herein.

265.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

266.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

267.    Defendants' conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

268.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of 42 U.S.C. § 1981.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION
### *UNDER 42 U.S. CODE § 1981*
### (AGAINST ALL DEFENDANTS)

269.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

270.    42 U.S.C. § 1981 prohibits retaliation against those who engage in protected activity by opposing race discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

271.    Plaintiff engaged in protected activity by, *inter alia*: complaining directly to HAWLEY about her racially discriminatory comments; emailing HAGER and KLOS on or about January 10, 2021 to complain about FORAN's misconduct; complaining to JEFFERSON in or around June 2022 and

49

to RODERICK in or around July 2022 about FORAN's discriminatory misconduct; complaining to RODERICK on or about January 18, 2023 about FORAN's misconduct and harassment; complaining to HAWLEY on or about January 12, 2024 and to JEFFERSON on or about January 13, 2024 about being held to a different standard than her non-black, non-African American peers; complaining to NALESNIK in or around February 2024; and complaining to her union representative, Mr. Berger, in or around March 2024, who in turn engaged in protected conduct on Plaintiff's behalf on or about March 20, 2024 and April 11, 2024.

272. Defendants engaged in an unlawful retaliatory practice by, *inter alia*, harassing, threatening, humiliating, undermining and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to Defendants' discriminatory practices towards Plaintiff and other employees of color and/or Plaintiff's participation in criticizing and lodging complaints about Defendants' discriminatory practices towards Plaintiff and other employees, including by, *inter alia*: subjecting Plaintiff to escalating harassment, false accusations, and public verbal attacks following her complaints; withdrawing directing opportunities and the attendant compensation from Plaintiff in or around July 2024; removing Plaintiff's access to the D.C. Bureau control room on or about April 26, 2024; eliminating Plaintiff's position; terminating Plaintiff's employment on or about November 20, 2024; and attempting to coerce Plaintiff into signing an unlawfully broad General Release and Waiver Agreement as a condition of receiving continued work-related benefits.

273. The close temporal proximity between Plaintiff's protected activity and Defendants' adverse actions, among other facts alleged herein, establishes a causal connection between the two. But for Plaintiff's protected activity, Defendants would not have taken the foregoing adverse actions against her.

274.   Each of the Individual Defendants is personally liable under Section 1981 because each personally participated in, directed, authorized, ratified, and/or was personally involved in the retaliatory conduct alleged herein.

275.   As a direct and proximate result of Defendants' unlawful and retaliatory conduct, in violation of 42 U.S.C. § 1981, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

276.   As a direct and proximate result of Defendants' unlawful and retaliatory conduct, in violation of 42 U.S.C. § 1981, Plaintiff, suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

277.   Defendants' conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

278.   Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of 42 U.S.C. § 1981 for retaliation.

**AS A THIRD CAUSE OF ACTION**
**FOR HOSTILE WORK ENVIRONMENT**
***UNDER 42 U.S. CODE § 1981***
**(AGAINST ALL DEFENDANTS)**

279.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

280. 42 U.S.C. § 1981 prohibits the creation and maintenance of a racially hostile work environment, as the enjoyment of all benefits, privileges, terms, and conditions of the contractual employment relationship includes the right to a workplace free of racial harassment.

281. Throughout her tenure at the D.C. Bureau, Plaintiff was subjected to a steady barrage of racially discriminatory and harassing conduct that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, including, *inter alia*: HAWLEY's racially degrading comments about Plaintiff's nails, hair, and appearance, including "WELL WE KNOW YOUR NAILS ARE FAKE WHAT ELSE IS FAKE ON YOU?", references to Plaintiff's "BLACK HAIR," and the repeated dehumanizing description of Plaintiff's nails as "CLAWS"; HAWLEY's September 2023 statement that Historically Black Colleges and Universities are places "WHERE ALL THE GIRLS ARE NAMED SHANIQUA"; FORAN's targeted and obsessive campaign of harassment, including spying on Plaintiff, circulating false rumors about her attendance, deliberately excluding her from workplace email distributions, obstructing her work opportunities, submitting pretextual and defamatory accusations of "continued lateness," and the violent February 9, 2024 tantrum directed at Plaintiff's work in full view of her colleagues; NALESNIK's repeated public verbal attacks and violent tantrums on or about February 8, 2024 and May 22, 2024; Mark White's September 25, 2024 racially degrading "twerking" comments and conduct directed at Plaintiff; and the disparate workload, staffing, and compensation practices imposed upon Plaintiff but not her non-Black counterparts.

282. Plaintiff subjectively perceived her work environment to be hostile and abusive, and the environment was one that a reasonable person in Plaintiff's position would find hostile and abusive.

283. The hostile work environment was based upon Plaintiff's race and color. But for Plaintiff's race and color, she would not have been subjected to this conduct.

284. The conduct described herein constituted a single, continuing unlawful employment practice. Component acts of this hostile work environment occurred within four years of the commencement of this action; accordingly, the entire hostile work environment, including component acts occurring earlier, is actionable. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

285. The Corporate Defendants are liable for the hostile work environment because it was created and perpetuated by Plaintiff's supervisors and because the Corporate Defendants knew, or in the exercise of reasonable care should have known, of the harassment — having received Plaintiff's repeated complaints from 2021 through 2024 — and failed to take prompt and appropriate corrective action, instead conducting sham investigations and permitting the harassment to continue and escalate.

286. Each of the Individual Defendants is personally liable under Section 1981 because each personally participated in, directed, authorized, ratified, enabled, and/or was personally involved in the creation and maintenance of the hostile work environment alleged herein.

287. As a direct and proximate result of Defendants' creation and maintenance of a racially hostile work environment in violation of 42 U.S.C. § 1981, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

288. As a direct and proximate result of Defendants' creation and maintenance of a racially hostile work environment in violation of 42 U.S.C. § 1981, Plaintiff suffered, and continues to suffer, severe

mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

289. Defendants' conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's federally protected rights, entitling Plaintiff to an award of punitive damages.

290. Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of 42 U.S.C. § 1981 for hostile work environment.

### AS A FOURTH CAUSE OF ACTION
### FOR DISCRIMINATION BASED ON RACE, COLOR, PERSONAL APPEARANCE, AND AGE
### *IN VIOLATION OF THE DCHRA, D.C. CODE § 2-1402.11*
### (AGAINST ALL DEFENDANTS)

291. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

292. The DCHRA, D.C. Code § 2-1402.11(a)(1), makes it an unlawful discriminatory practice for an employer, "wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, . . . age, . . . [or] personal appearance" of any individual, "to fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his or her compensation, terms, conditions, or privileges of employment."

293. Plaintiff is protected under the DCHRA on the basis of her race and color (black, African American); her personal appearance, which under D.C. Code § 2-1401.02(22) includes the outward appearance of a person with regard to bodily condition or characteristics, manner or style of dress, and manner or style of personal grooming, including hairstyle; and her age, as the DCHRA protects all individuals 18 years of age or older, D.C. Code § 2-1401.02(2).

54

294. Each of the Individual Defendants qualifies as an "employer" within the meaning of D.C. Code § 2-1401.02(10), which includes "any person acting in the interest of such employer, directly or indirectly," and each is therefore subject to personal liability under the DCHRA. At all relevant times, each Individual Defendant acted in the interest of the Corporate Defendants with respect to the terms, conditions, and privileges of Plaintiff's employment.

295. Defendants discriminated against Plaintiff, wholly or partially because of her race and color, with respect to the compensation, terms, conditions, and privileges of her employment, including by means of the adverse actions enumerated in subparagraphs (a) through (i) of the First Cause of Action above, which are incorporated herein.

296. Defendants further discriminated against Plaintiff, wholly or partially because of her personal appearance, including through HAWLEY's repeated derogatory comments about and conduct directed at Plaintiff's nails, hair, hairstyle, and manner and style of personal grooming, and the adverse treatment and marginalization of Plaintiff that accompanied and followed those comments.

297. In the alternative, Defendants discriminated against Plaintiff, wholly or partially because of her age, by withholding job opportunities based upon an expressed preference for "seasoned" directors and individuals with "20 years' experience," which operated to the disadvantage of Plaintiff, who was younger than the individuals favored by, and the individuals expressing, that preference.

298. Defendants' discriminatory acts were undertaken wholly or partially for discriminatory reasons based upon Plaintiff's protected traits, and Defendants would not have taken the same actions against Plaintiff absent those traits.

299. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the DCHRA, Plaintiff suffered, and continues to suffer, monetary and/or economic damages,

including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

300. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the DCHRA, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

301. Defendants' conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

302. Plaintiff hereby makes a claim against Defendants under all applicable provisions of the DCHRA.

**AS A FIFTH CAUSE OF ACTION**
**FOR RETALIATION**
*IN VIOLATION OF THE DCHRA, D.C. CODE § 2-1402.61*
**(AGAINST ALL DEFENDANTS)**

303. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

304. The DCHRA, D.C. Code § 2-1402.61, makes it an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected under the DCHRA.

305. Plaintiff engaged in activity protected by the DCHRA by opposing and complaining about Defendants' discriminatory conduct, including the protected activity enumerated in the Second Cause of Action above, which is incorporated herein.

306. Defendants retaliated against Plaintiff for her protected activity through the adverse actions enumerated in the Second Cause of Action above, which are incorporated herein, including, *inter*

56

*alia*, escalating harassment, the withdrawal of directing opportunities, the removal of Plaintiff's control room access, the elimination of Plaintiff's position, Plaintiff's termination, and the coercive General Release and Waiver Agreement.

307. The close temporal proximity between Plaintiff's protected activity and Defendants' adverse actions, among other facts alleged herein, establishes a causal connection between the two.

308. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the DCHRA, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

309. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the DCHRA, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

310. Defendants' conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

311. Plaintiff hereby makes a claim against Defendants under all applicable provisions of the DCHRA for retaliation.

## AS A SIXTH CAUSE OF ACTION
## FOR HARASSMENT AND HOSTILE WORK ENVIRONMENT
### *IN VIOLATION OF THE DCHRA, D.C. CODE § 2-1402.11(c-1)*
### (AGAINST ALL DEFENDANTS)

312. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

57

313. Under the DCHRA, D.C. Code § 2-1402.11(c-1) and (c-2), it is an unlawful discriminatory practice to subject an individual to harassment — conduct, whether direct or indirect, verbal or nonverbal, based wholly or partially on an individual's protected traits, that unreasonably alters the individual's terms, conditions, or privileges of employment or has the purpose or effect of creating an intimidating, hostile, or offensive work environment. Under the DCHRA, harassment is evaluated based upon the totality of the circumstances and need not be severe or pervasive to be actionable.

314. Throughout her tenure at the D.C. Bureau, Plaintiff was subjected to harassment based wholly or partially upon her race, color, and personal appearance, including the conduct described in the Third Cause of Action above, which is incorporated herein, and including HAWLEY's repeated derogatory comments directed at Plaintiff's personal appearance, nails, hair, hairstyle, and grooming.

315. This conduct unreasonably altered Plaintiff's terms, conditions, and privileges of employment and had the purpose and effect of creating an intimidating, hostile, and offensive work environment. Plaintiff subjectively perceived her work environment to be hostile, abusive, and offensive, and the totality of the circumstances establishes that the environment was objectively intimidating, hostile, and offensive.

316. The harassment constituted a single, continuing unlawful practice with component acts occurring within the limitations period, rendering the entire course of conduct actionable under the continuing violation doctrine.

317. The Corporate Defendants are liable for the harassment and hostile work environment because it was created and perpetuated by Plaintiff's supervisors, and because the Corporate Defendants knew, or in the exercise of reasonable care should have known, of the harassment — having

received Plaintiff's repeated complaints from 2021 through 2024 — and failed to take prompt and appropriate corrective action.

318. Each of the Individual Defendants is personally liable under the DCHRA because each personally participated in, directed, authorized, ratified, enabled, and/or was personally involved in the harassment alleged herein, and each qualifies as an "employer" within the meaning of D.C. Code § 2-1401.02(10).

319. As a direct and proximate result of Defendants' unlawful harassment in violation of the DCHRA, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

320. As a direct and proximate result of Defendants' unlawful harassment in violation of the DCHRA, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

321. Defendants' conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

322. Plaintiff hereby makes a claim against Defendants under all applicable provisions of the DCHRA for harassment and hostile work environment.

**AS A SEVENTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING**
*IN VIOLATION OF THE DCHRA, D.C. CODE § 2-1402.62*
**(AGAINST THE INDIVIDUALDEFENDANTS)**

323. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

324. The DCHRA, D.C. Code § 2-1402.62, makes it an unlawful discriminatory practice "for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter or to attempt to do so."

325. Each of the Individual Defendants knowingly and/or recklessly aided, abetted, invited, compelled, coerced, and/or actively participated in the unlawful, discriminatory, harassing, and retaliatory conduct alleged herein, in violation of D.C. Code § 2-1402.62.

326. As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the DCHRA, Plaintiff suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of monetary damages and other relief.

327. As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the DCHRA, Plaintiff suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

328. The Individual Defendants' conduct was knowing, malicious, willful, and wanton and/or showed a reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

329. Plaintiff hereby makes a claim against the Individual Defendants under all applicable provisions of the DCHRA for aiding and abetting.

## **JURY DEMAND**

330. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate 42 U.S.C. § 1981;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An award of compensatory damages in an amount to be determined at trial, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to the loss of past and future income, wages, compensation, seniority, and other benefits of employment;

D. An award of compensatory damages in an amount to be determined at trial, to compensate Plaintiff for all non-monetary damages, including but not limited to her severe mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering, reputational harm, and other physical and mental injuries;

E. An award of punitive damages in an amount to be determined at trial;

F. An award of pre-judgment and post-judgment interest as permitted by law;

G. An award of the costs and disbursements of this action, together with Plaintiff's reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and the DCHRA, including D.C. Code §§ 2-1403.16(f) and 2-1403.13(a)(1)(E); and

H. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 15, 2026

Respectfully submitted,
THE COCHRAN FIRM

DEREK S. SELLS
DC Bar Number 420398
Counsel for Plaintiff
One Exchange Plaza
55 Broadway, 23rd Floor
New York, New York 10006
(Tel No.) (212) 553-9214
(Facsimile) (212) 227-8763