UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

--------------------------------------------------------------X

SHERECE SHEMEKA BROWN,

Plaintiff,

- against -

CBS NEWS, INC., CBS BROADCASTING INC., PARAMOUNT GLOBAL d/b/a PARAMOUNT, LAURA FORAN, ALISON HAWLEY, BRIAN NALESNIK, MELISSA MCKEON, MARY HAGER, RICK JEFFERSON, ROSS DAGAN, MICHAEL GARRY RODERICK, and DANIEL KLOS,

Defendants.

--------------------------------------------------------------X

Civil Action No. 1:26-cv-02100 (JMC)

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................1

BACKGROUND ....................2

ARGUMENT ....................4

I. *COLORADO RIVER* PROVIDES NO BASIS TO STAY THIS ACTION. ....................4

A. The Actions Are Not Parallel Because the New York Action Cannot Resolve Any Claim Pending Before This Court....................4

B. No "Exceptional Circumstances" Justify Surrendering Jurisdiction....................6

II. DEFENDANTS HAVE NOT MADE THE SHOWING REQUIRED FOR A STAY UNDER THE COURT'S INHERENT AUTHORITY. ....................9

CONCLUSION....................10

# TABLE OF AUTHORITIES

Page(s)

***Cases***

*Abe v. N.Y. Univ.*, 2016 U.S. Dist. LEXIS 43611 (S.D.N.Y. 2016) ....................6

*Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724 (D.C. Cir. 2012)....................2, 9, 10

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)................ passim

*Evans v. Unison Agreement Corp.*, 2026 U.S. Dist. LEXIS 183837 (D.D.C. 2026).............6, 9, 10

*Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346 (D.C. Cir. 2003)....................4, 5

*Karol v. Old Second Nat'l Bank*, 2020 U.S. Dist. LEXIS 201690 (N.D. Ill. 2020) ....................8

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ....................2, 9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)........................ passim

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ....................7

*Saddler v. AMEC Foster Wheeler Env't & Infra., Inc.*, 253 F. Supp. 3d 210 (D.D.C. 2017) .....4, 6

*United States Dominion, Inc. v. Herring Networks, Inc.*, 639 F. Supp. 3d 143 (D.D.C. 2022).......6

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517 (2d Cir. 2001).................7

***Statutes***

42 U.S.C. § 1981 .................... passim

District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ...........................1, 3, 5, 7

Plaintiff Sherece Shemeka Brown ("Plaintiff" or "Ms. Brown"), by and through her undersigned counsel, respectfully submits this Memorandum in Opposition to Defendants' Motion to Stay This Action Pending Resolution of the Parallel New York State Court Proceeding (Doc. No. 18) (the "Motion" or "Mot.").

**PRELIMINARY STATEMENT**

Defendants ask this Court to suspend the only action in which the claims before it can be heard, in deference to a state court proceeding from which those very claims were dismissed, at Defendants' urging, for lack of subject matter jurisdiction. In the New York Action, Defendants argued that Ms. Brown's claims arising from her employment at their Washington, D.C. Bureau did not belong in New York, and they prevailed: on May 10, 2026, the New York Supreme Court dismissed every claim predicated on the D.C. conduct, a disposition that was jurisdictional and not on the merits. Mot. Ex. B at 6-9, 12-13. Ms. Brown then brought her D.C. claims in this District, where the conduct occurred and where its impact was felt, under 42 U.S.C. § 1981 ("Section 1981") and the District of Columbia Human Rights Act ("DCHRA"). Doc. No. 1. Defendants now ask this Court to hold those claims in abeyance while the New York court adjudicates the single, narrow controversy remaining before it: whether Defendants discriminated and retaliated against Ms. Brown in connection with the denial of a New York-based directorship. Ms. Brown has expressly excluded that claim from this action and disclaimed any duplicative relief. Doc. No. 1 ¶¶ 13-15, 205.

The Motion fails at the threshold. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). A stay under *Colorado River* presupposes that the state litigation "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," and

"[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). There is no doubt here, substantial or otherwise: a final judgment in the New York Action, whichever way it runs, will not resolve a single claim, issue, or element pending before this Court, because the New York court has already held that the conduct underlying this action lies beyond the reach of the statutes it is adjudicating. The actions are not parallel, and no factor in the *Colorado River* analysis, least of all the "piecemeal litigation" Defendants themselves engineered, supplies the "exceptional circumstances" the doctrine demands.

Defendants' alternative request for a stay under the Court's inherent authority fares no better. A *Landis* stay requires the movant to "make out a clear case of hardship or inequity in being required to go forward" whenever there is "even a fair possibility" that the stay will damage the opposing party. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Defendants identify no hardship beyond the ordinary burden of defending claims properly brought, and the stay they propose, which would run through summary judgment briefing in New York in June 2027 and whatever trial and appellate proceedings follow, is precisely the indefinite, "immoderate" stay the D.C. Circuit has held unlawful absent a pressing need. *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731-32 (D.C. Cir. 2012) (reversing a stay order because there was no articulable need for an indefinite stay that clearly outweighed the injury to the party being stayed). The Motion should be denied.

## BACKGROUND

Ms. Brown, a Black, African American woman, worked for Defendants for approximately seventeen years, rising from Page to Graphics Production Assistant to Associate Director on the strength of her performance. Doc. No. 1 ¶¶ 63-68. In November 2020, Defendants transferred her

from New York to their Washington, D.C. Bureau, where she worked from November 2020 until her November 20, 2024 termination and January 31, 2025 separation. *Id.* ¶¶ 80, 227; Mot. Ex. B at 2. This action concerns what happened to her there: racially degrading comments and conduct by her supervisors; disparate workload, staffing, compensation, and reimbursement practices; the denial of the *Face the Nation* Backup Director position; escalating retaliation following her repeated internal complaints; the removal of her control room access and the elimination of her position; her termination; and a racially hostile work environment at the D.C. Bureau. Doc. No. 1 ¶¶ 63-258.

On February 27, 2025, Ms. Brown commenced the New York Action, asserting claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Mot. at 1. Defendants moved to dismiss, arguing principally that those statutes do not reach discriminatory conduct occurring in, and impacting a plaintiff in, the District of Columbia. Mot. Ex. B at 2. By Decision and Order dated May 10, 2026, the New York Supreme Court agreed. It dismissed the NYSHRL and NYCHRL discrimination and retaliation claims "to the extent that they are based upon conduct occurring in Washington, D.C." for lack of subject matter jurisdiction, dismissed the First Amended Complaint in its entirety as against seven of the nine Individual Defendants, and dismissed the aiding and abetting, supervisory liability, and hostile work environment causes of action in their entirety. Mot. Ex. B at 12-13. The sole claims that survived are the NYSHRL and NYCHRL claims concerning the denial of the directorship of the New York-based *Saturday Morning Show*, and related retaliation, against the Corporate Defendants, Hawley, and Jefferson. *Id.* Ms. Brown filed a Second Amended Complaint conforming to that ruling on May 20, 2026. Mot. Ex. C. On August 13, 2026, the New York court entered a scheduling order expressly limiting discovery to "Plaintiff's application for the CBS

Saturday Mornings show," with summary judgment motions due in early June 2027. Mot. Ex. D; Mot. at 6.

On June 15, 2026, Ms. Brown filed this action, asserting discrimination, retaliation, and hostile work environment claims under Section 1981, and discrimination, retaliation, harassment and hostile work environment, and aiding and abetting claims under the DCHRA, all arising from the D.C. conduct that the New York court held itself without jurisdiction to adjudicate. Doc. No. 1. The Complaint pleads the New York court's ruling on its face and alleges that the claims asserted here "arise out of that D.C.-based conduct and are properly brought in this Court, where the conduct occurred and where its impact was felt." *Id.* ¶ 14. It expressly disclaims the *Saturday Morning Show* claims and any duplicative relief, pleading the allegations concerning that directorship "solely as relevant background evidence and to provide context." *Id.* ¶¶ 15, 205. Defendants answered no claim and took no discovery; instead, on August 28, 2026, they moved to stay. Doc. No. 18.

## ARGUMENT

### I. *COLORADO RIVER* PROVIDES NO BASIS TO STAY THIS ACTION.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. The *Colorado River* doctrine permits a district court to decline that obligation in deference to concurrent state litigation only in "truly 'exceptional circumstances,'" upon a deliberative weighing of "the inconvenience of the federal forum, the order in which the courts assumed jurisdiction, the desirability of avoiding piecemeal litigation, whether federal or state law controls and whether the state forum will adequately protect the interests of the parties." *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 352 (D.C. Cir. 2003). The balance is "heavily weighted in favor of the exercise of jurisdiction"; the task "is to

ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the surrender of that jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 25-26. Defendants can satisfy neither the doctrine's threshold requirement of parallel proceedings nor its exceptional circumstances test.

***A. The Actions Are Not Parallel Because the New York Action Cannot Resolve Any Claim Pending Before This Court.***

Proceedings are "parallel" for *Colorado River* purposes when they involve "substantially the same parties . . . litigating substantially the same issues" in two fora. *Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*, 253 F. Supp. 3d 210, 219 (D.D.C. 2017); Mot. at 7. The inquiry is not an exercise in comparing pleadings paragraph by paragraph. It asks whether the state litigation "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," because a decision to abstain "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Moses H. Cone*, 460 U.S. at 28.

Measured against that standard, these actions are not parallel; they are complementary and non-overlapping by court order. After the May 10, 2026 Decision and Order and the conforming Second Amended Complaint, the New York Action presents one question: whether the Corporate Defendants, Hawley, and Jefferson violated the New York Human Rights Laws in denying Ms. Brown the *Saturday Morning Show* directorship and in retaliating against her related protected activity. This action presents different claims, under Section 1981 and the DCHRA; arising from different adverse actions, namely the D.C. workload, staffing, compensation, and reimbursement disparities, the *Face the Nation* denial, the removal of her control room access, the elimination of her position, her termination, and a racially hostile work environment at the D.C. Bureau; governed

by different law; and asserted against all twelve Defendants, seven of whom are no longer parties to the New York Action at all. Ms. Brown has excluded from this action the only claims pending in New York. Doc. No. 1 ¶¶ 15, 205. However the New York Action is resolved, every claim before this Court will remain to be adjudicated here, in full. That is dispositive: where there is "any substantial doubt" that the state litigation will completely resolve the federal case, a *Colorado River* stay is "a serious abuse of discretion." *Moses H. Cone*, 460 U.S. at 28; *see Handy*, 325 F.3d at 352-53.

Defendants' contrary showing compares this Complaint to the wrong pleading. Their catalogue of overlapping paragraphs, Mot. at 2-5, is drawn from the First Amended Complaint in New York, a superseded pleading that Defendants themselves successfully moved to dismiss in relevant part. Their comparison to the operative Second Amended Complaint, Mot. at 5-6, proves Ms. Brown's point rather than their own: the Second Amended Complaint paragraphs Defendants quote concern the *Saturday Morning Show* directorship, which this Complaint pleads "solely as relevant background evidence and to provide context," expressly reserving those claims to the New York Action. Doc. No. 1 ¶ 205. Overlap in background narrative is not identity of issues. Any account of Ms. Brown's employment will begin from the same facts; that does not make a New York failure to hire claim and a D.C. hostile work environment claim the same controversy.

Defendants' own authorities confirm the distinction. In *Abe v. New York University*, the federal Title VII and ADEA claims were premised on the same conduct as the pending NYCHRL claims, such that "a victory by [d]efendant on the NYCHRL claims in state court would necessarily preclude [p]laintiff from claiming violations of Title VII and the ADEA." No. 14-cv-9323 (RJS), 2016 U.S. Dist. LEXIS 43611, at *17-21 (S.D.N.Y. Mar. 30, 2016); Mot. at 9-11. Defendants do not, and cannot, contend that a judgment on the *Saturday Morning Show* claims would preclude

any claim asserted here: the New York court's dismissal of the D.C.-based claims was jurisdictional, not on the merits, and the surviving New York claims share no element with the claims in this action. Where the overlap between two proceedings is partial, courts in this District decline to abstain. *See United States Dominion, Inc. v. Herring Networks, Inc.*, 639 F. Supp. 3d 143, 156-58 (D.D.C. 2022) (declining to stay under *Colorado River* where there was "minimal overlap between the parties" and "virtually no overlap between the issues," such that the state action would not resolve the federal case); *see also Evans v. Unison Agreement Corp.*, No. 26-999 (RC), 2026 U.S. Dist. LEXIS 183837, at *6-13 (D.D.C. Aug. 14, 2026) (weighing the same factors and declining to abstain under *Colorado River*). *Dominion* followed *Saddler*, where the absence of the sole federal defendant from the state court action "alone[] provide[d] sufficient basis to deny" deferral, because the state case could not "possibly resolve the dispute between the parties in [the federal] action." 639 F. Supp. 3d at 155-56 (quoting *Saddler*, 253 F. Supp. 3d at 219-20). The mismatch here is starker still: seven of the twelve Defendants, including every Individual Defendant based at the D.C. Bureau, are parties to this action alone.

***B. No "Exceptional Circumstances" Justify Surrendering Jurisdiction.***

Even if the actions were parallel, the *Colorado River* factors would defeat a stay. Defendants concede that the first two factors, jurisdiction over property and the convenience of the federal forum, are neutral. Mot. at 11. Because the balance begins "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, neutral factors do not advance Defendants' cause: "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). If anything, the convenience factor affirmatively favors this forum: the conduct occurred at

Defendants' D.C. Bureau, four of the Individual Defendants worked there, and the witnesses to the D.C. events are concentrated in this District. Doc. No. 1 ¶¶ 6, 8.

The piecemeal litigation factor, which Defendants call "the most important," Mot. at 11, carries no weight here, for three independent reasons. *First*, the concern animating the factor is the danger of inconsistent adjudications of the same rights, and "[t]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816. No such danger exists, because no claim, issue, or element is common to the two actions: the New York court will decide whether the denial of a New York directorship violated New York law, and this Court will decide whether the D.C. conduct violated Section 1981 and the DCHRA. Neither judgment can contradict the other. *Second*, whatever division of this controversy exists is of Defendants' own making. Defendants moved to dismiss the D.C.-based claims from the New York Action on the ground that they did not belong there, and they prevailed. Having succeeded in that position, they cannot now invoke the resulting division as a reason to freeze the very forum to which their own motion directed these claims. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ."). *Third*, a stay would not avoid piecemeal litigation; it would guarantee it, in sequence rather than in parallel. Because nothing decided in New York will narrow this case, the parties would return to this Court years from now and begin from a standing start. *Colorado River* abstention exists to conserve judicial resources, not to ration a plaintiff's claims into consecutive installments.

The order of jurisdiction factor fares no better. Priority "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been

made in the two actions." *Moses H. Cone*, 460 U.S. at 21. The progress Defendants tout in New York is progress on a claim that is not before this Court, in discovery the New York court has expressly limited to "Plaintiff's application for the CBS Saturday Mornings show." Mot. Ex. D. On the claims actually pending here, no court anywhere has taken a single step, and none ever will unless this action proceeds. The New York Action's head start on a different claim is no reason to handicap this one.

The source of law factor weighs firmly against abstention. Three of Ms. Brown's seven causes of action arise under federal law, and "the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26. Defendants' observation that "[t]he New York case does not implicate issues of federal law," Mot. at 12, states the problem rather than the solution: it confirms that Ms. Brown's Section 1981 claims will be adjudicated in this action or not at all.

For the same reason, the final factor, whether the state proceeding can adequately protect the parties' rights, is dispositive against a stay. The New York court cannot protect Ms. Brown's rights with respect to the claims in this action: those claims are not pending before it, and its May 10, 2026 ruling establishes that the conduct on which they rest is beyond the reach of the statutes it is adjudicating. A state proceeding that will leave the federal plaintiff's claims wholly unadjudicated is, by definition, not "an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28.

Finally, there is nothing "vexatious" or "contrived" about this action. Mot. at 8, 11-12. Ms. Brown filed it five weeks after the ruling dismissing her D.C.-based claims from the New York Action, in the district where the conduct occurred, under the statutes that govern it, with express disclaimers ensuring no duplication of the claims remaining in New York. Doc. No. 1 ¶¶ 13-15,

205. That is diligent conformity to a court's ruling, not forum shopping. The authority Defendants cite on this point involved a plaintiff whose federal claims "closely track[ed] his state-court pleadings." Mot. at 11-12 (quoting *Karol v. Old Second Nat'l Bank*, No. 20 C 4344, 2020 U.S. Dist. LEXIS 201690, at *14 (N.D. Ill. Oct. 29, 2020)). Ms. Brown did the opposite: she removed from this action the claims that remain in New York.

## II. DEFENDANTS HAVE NOT MADE THE SHOWING REQUIRED FOR A STAY UNDER THE COURT'S INHERENT AUTHORITY.

A *Landis* stay is not a lesser included alternative to *Colorado River*; it carries its own exacting burden. The power to stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance," and "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 254-55. The D.C. Circuit has added a temporal command: a district court abuses its discretion in ordering a stay "of indefinite duration in the absence of a pressing need," and a stay is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits." *Belize*, 668 F.3d at 731-32 (quoting *Landis*). Defendants satisfy none of these requirements.

Defendants identify no cognizable hardship. Their sole asserted injury is the prospect of duplicative discovery. Mot. at 12-14. But the New York court has already confined discovery in that action to Ms. Brown's *Saturday Morning Show* application, Mot. Ex. D, an application this action places at issue only as background. Doc. No. 1 ¶ 205. Discovery here will concern the D.C. Bureau: the comparators, the compensation, staffing, and reimbursement records, the internal complaints, and the percipient witnesses to conduct that the New York court will never examine.

To the extent modest overlap exists at the margins, the answer is coordination, through cross-noticing of depositions or stipulations permitting discovery taken in one action to be used in the other, not the wholesale suspension of a federal civil rights case. The ordinary burden of defending claims properly brought is not "hardship or inequity" within the meaning of *Landis*; if it were, every defendant facing related litigation would be entitled to a stay. *See Evans*, 2026 U.S. Dist. LEXIS 183837, at *15-17 (finding insufficient hardship to justify a stay under the court's inherent authority, where the movant had not made out "a clear case of hardship or inequity in being required to go forward" and both actions remained at the pleading stage, with neither more advanced than the other).

The stay Defendants seek is also indefinite on its face. It would run until "resolution" of the New York Action, Mot. at 1, 14, where summary judgment motions are not due until early June 2027, Mot. at 6, and where trial and appellate review would follow. Defendants' proposed order supplies no end date, only status reports every sixty days, which would measure the stay's length without limiting it. *Evans* rejected this very device: presented with an offer of "joint status reports every sixty (60) days" as a bounded parameter, the court held that the suggestion did not solve its "underlying concern" that an authoritative disposition of the other action was "not likely to be provided anytime soon, if at all." 2026 U.S. Dist. LEXIS 183837, at *16-17. An open-ended stay of this kind, untethered to any date certain and contingent on the pace of another court's docket, is precisely what the D.C. Circuit condemned in *Belize* absent a pressing need that Defendants nowhere demonstrate. 668 F.3d at 731-32.

The "fair possibility" of damage to Ms. Brown, by contrast, is concrete. The events at issue span 2020 through 2024. The witnesses include current and former employees of Defendants who will disperse, and whose recollections will fade, as the years pass. Ms. Brown was terminated in

November 2024 and seeks redress for the violation of her civil rights; for her, an open-ended postponement of adjudication is not a neutral scheduling event but a prolongation of the injury itself. Where a stay presents even a fair possibility of such damage, *Landis* requires the clear showing of hardship that Defendants have not made. 299 U.S. at 255.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Stay in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 11, 2026

Respectfully submitted,

THE COCHRAN FIRM

*/s/ Derek S. Sells*
DEREK S. SELLS
DC Bar Number 420398
One Exchange Plaza
17 State Street, 14th Floor
New York, New York 10004
(Tel No.) (212) 553-9214
(Facsimile) (212) 227-8763
*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I certify that on this 11th day of September 2026, a true and correct copy of the foregoing document was filed with the Clerk of Court via the CM/ECF system, which caused a copy of the same to be served upon:

Jeremy Ben Merkelson, Esq.
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
*Counsel for Defendants*

*/s/ Derek S. Sells*
DEREK S. SELLS